RECEIPT # 67006
AMOUNT $ 250
SUMMONS ISS. 1/75
LOCAL RULE
WAIVER C
MCF ISSU:
AO 120 OR 121
BY DPTY CLK
DATE 9-20-05

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAN C. ANDERSEN, SUZANNE BOURASSA, JOHN CARLSON, ROBERT DELIA, STEVEN DUMAIS, SARA-ANNE EAMES, SHAUN FERRIS, JOHN FOSTER, DENNIS FOWLER, EDWARD GALVIN, JR., BRITTON HALL, PATRICIA HANNIGAN, MARIE IGNOTO, DAVID JOHNSON, DAWN LATTIME, KATHLEEN MCDONOUGH, TARA MCDONOUGH, ELEANOR POOLE and DONNA M. TOMASO, On Behalf Of Themselves And All Others Similarly Situated, ) | No. <br><br> CLASS ACTION COMPLAINT <br><br> JURY TRIAL DEMANDED <br><br> 05 - 11904 RCL <br> Referred to M.J. JGDeen |

No.

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

05 - 11904 RCL
Referred to M.J. JGDeen

ALAN C. ANDERSEN, SUZANNE
BOURASSA, JOHN CARLSON, ROBERT
DELIA, STEVEN DUMAIS, SARA-ANNE
EAMES, SHAUN FERRIS, JOHN FOSTER,
DENNIS FOWLER, EDWARD GALVIN,
JR., BRITTON HALL, PATRICIA
HANNIGAN, MARIE IGNOTO, DAVID
JOHNSON, DAWN LATTIME, KATHLEEN
MCDONOUGH, TARA MCDONOUGH,
ELEANOR POOLE and DONNA M.
TOMASO, On Behalf Of Themselves And All
Others Similarly Situated,

            Plaintiffs,

vs.

BAYVIEW CREMATORY, LLC, DEREK A.
WALLACE, LINDA STOKES, LARRY
STOKES, AMERICAN CREMATION
SOCIETY, INC., STEPHEN G.
SCATAMACCHIA, COMMONWEALTH
CREMATION & SHIPPING SERVICE, INC.,
CREMATION SOCIETY OF
MASSACHUSETTS, DRACUT FUNERAL
HOME INCORPORATED, HAMEL
WICKENS & TROUPE FUNERAL HOME,
INC., ROGER HAMEL, HART-WALLACE
FUNERAL HOME, NEPTUNE SOCIETY,
INC., SIMPLICITY BURIAL
& CREMATION, INC. f/k/a OCEANSIDE
FAMILY FUNERAL HOME, and DOES 1-50,
INCLUSIVE,

            Defendants.

Plaintiffs Alan C. Andersen, Suzanne Bourassa, John Carlson, Robert Delia, Steven Dumais, Sara-Anne Eames, Shaun Ferris, John Foster, Dennis Fowler, Edward Galvin, Jr., Britton Hall, Patricia Hannigan, Marie Ignoto, David Johnson, Dawn Lattime, Kathleen McDonough, Tara McDonough, Eleanor Poole and Donna M. Tomaso ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.    This is a class action complaint arising from the mishandling, abuse and desecration of the remains of the loved ones of Plaintiffs and the members of the Class (defined below) they seek to represent.

2.    Plaintiffs and the Class contracted with, and utilized the services of, the Funeral Home Defendants (defined below), to properly and respectfully perform services, including the cremation of their loved ones. Motivated by greed, the Funeral Home Defendants utilized the services of Bayview Crematory, which was "well known throughout the industry" as a "shoddy operator." Keeping with their reputation, Bayview Crematory engaged in practices offensive to public decency. For example, Bayview Crematory performed multiple cremations at a time, commingling bodies as they were being cremated, failed to keep accurate records concerning the custody of bodies, and engaged in other wrongful conduct, so that the bodies of the deceased were returned to their family members in urns mixed with the ashes of other bodies or not returned at all. The Funeral Home Defendants turned a willful blind eye to the actions of defendant Bayview Crematory. Unknown to Plaintiffs and the Class, Bayview Crematory operated without a license since at least 1999 until such time as it was closed down by authorities in February, 2005.

3.    During July 2005, defendant Derek A. Wallace and two other individuals, including a Bayview Crematory employee, were arrested and subsequently indicted, in connection with the

- 1 -

wrongdoing at Bayview Crematory alleged herein. Soon thereafter, charges were also brought against defendant Bayview Crematory.

4.     This suit seeks equitable relief and damages on behalf of the families and loved ones of all decedents whose remains were cremated by Bayview Crematory and alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, negligence, intentional mishandling of a corpse, negligent mishandling of a corpse, intentional infliction of emotional distress, negligent infliction of emotional distress and civil conspiracy.

## PARTIES

### Plaintiffs

5.     Plaintiff Alan C. Andersen is a resident of Boston, Massachusetts and is the son and next of kin of Tyra I. Peterson Andersen.

6.     Plaintiff Suzanne Bourassa is a resident of Dorchester, Massachusetts and is the daughter and next of kin of Gloria Bourassa.

7.     Plaintiff John Carlson is a resident of Seabrook, New Hampshire and is the son and next of kin of Maria A. Carlson, and the brother of Judith P. Eastman.

8.     Plaintiff Robert Delia is a resident of Pepperell, Massachusetts and is the husband and next of kin of Joan Yvone Delia.

9.     Plaintiff Steven Dumais is a resident of Dracut, Massachusetts and is the brother and next of kin of Denise Dumais.

10.     Plaintiff Sara-Anne Eames is a resident of Newburyport, Massachusetts and is the daughter and next of kin of Herbert Howell Eames, Sr.

11.     Plaintiff Shaun Ferris is a resident of Windham, New Hampshire and is the son and next of kin of Theresa Ferris.

- 2 -

12.  Plaintiff John Foster is a resident of Salisbury, Massachusetts and is the son and next of kin of Joan M. Foster.

13.  Plaintiff Dennis Fowler is a resident of Otego, New York and is the father and next of kin of Celeste Fowler.

14.  Plaintiff Edward Galvin, Jr. is a resident of Leesburg, Virginia, and is the son and next of kin of Edward Galvin.

15.  Plaintiff Britton Hall is a resident of Sherborn, Massachusetts and is the son and next of kin of William Anthony Hall.

16.  Plaintiff Patricia Hannigan is a resident of New Castle, Maine and was a close family friend and held the power of attorney over Gertrude L. Scheid's affairs.

17.  Plaintiff Marie Ignoto is a resident of Watertown, Massachusetts and is the daughter and next of kin of Claire A. Ignoto.

18.  Plaintiff David Johnson is a resident of Tyngsboro, Massachusetts and is the husband and next of kin of Gloria Dubois-Johnson.

19.  Plaintiff Dawn Lattime is a resident of Salisbury, Massachusetts and is the daughter and next of kin of Donald Lattime.

20.  Plaintiff Kathleen McDonough is a resident of Pawtucket, Rhode Island and is the daughter and next of kin of Judith P. Eastman and the granddaughter of Maria A. Carlson.

21.  Plaintiff Tara McDonough is a resident of Pawtucket, Rhode Island and is the granddaughter of Judith P. Eastman and the great-granddaughter of Maria A. Carlson.

22.  Plaintiff Eleanor Poole is a resident of Estero, Florida and is the daughter and next of kin of Alice Scafard.

- 3 -

23.    Donna M. Tomaso is a resident of Melrose, Massachusetts and is the daughter and next of kin of Rose A. Tomaso, her mother, and Charles Tomaso, her father.

**Defendants**

24.    Defendant Bayview Crematory, LLC, is a New Hampshire corporation with its principal place of business at 204 New Zealand Road, Seabrook, New Hampshire. Bayview Crematory handled thousands of cremations each year. Bayview Crematory picked up bodies to be cremated from several states, including New Hampshire, Maine, Massachusetts, and Rhode Island. Criminal charges were brought against Bayview Crematory in connection with the facts alleged herein.

25.    Defendant Derek A. Wallace ("Wallace") operated and/or owned Bayview Crematory at all times relevant herein. Upon information and belief, defendant Wallace is a citizen of the state of New Hampshire. Defendant Wallace also owned defendants Hart-Wallace Funeral Home and Simplicity Burial & Cremation and was arrested and indicted in connection with facts alleged herein. Defendant Wallace sold defendant Bayview to defendants Linda Stokes and Larry Stokes for a token $1, but Wallace continued to operate and manage Bayview.

26.    Defendant Linda Stokes, defendant Wallace's mother, at all times relevant herein, was the owner of the property where defendant Bayview Crematory is located. Upon information and belief, defendant Linda Stokes is a citizen of the state of New Hampshire.

27.    Defendant Larry Stokes, defendant Wallace's step-father, at all times relevant herein, was the owner of the property where defendant Bayview Crematory is located. Upon information and belief, defendant Larry Stokes is a citizen of the state of New Hampshire.

28.    Defendants named in ¶¶24-27 are referred to collectively herein as the "Bayview Crematory Defendants."

- 4 -

29.     Defendant American Cremation Society, Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 324 Washington Street, Haverhill, Massachusetts.

30.     Defendant Stephen G. Scatamacchia is the owner and operator of American Cremation Society, Inc.

31.     Defendant Commonwealth Cremation & Shipping Service, Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 1654 Washington Street, Boston, Massachusetts.

32.     Defendant Cremation Society of Massachusetts is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business at 28 Adams Street, Quincy, Massachusetts and a principal place of business at 678 Main Street, Harwich, MA 02645. Defendant Cremation Society of Massachusetts is a cremation society that facilitates cremations. Defendant Hamel Wickens & Troupe is the parent company of defendant Cremation Society of Massachusetts which is owned by defendant Roger Hamel.

33.     Defendant Dracut Funeral Home Incorporated is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2159 Lakeview Avenue, Dracut, Massachusetts.

34.     Defendant Hamel Wickens & Troupe Funeral Home, Inc. ("Hamel Wickens") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 26 Adams Street, Quincy, Massachusetts. Bayview Crematory handled at least 60% of Hamel Wickens' cremation business.

35.     Defendant Roger Hamel is the owner and operator of defendant Hamel Wickens.

- 5 -

36.    Defendant Hart-Wallace Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Lawrence, Massachusetts.

37.    Defendant Neptune Society, Inc. ("Neptune Society") is a cremation society with its principal place of business at 4312 Woodman Avenue, Third Floor, Sherman Oaks, CA 91423. Defendant Neptune Society operates throughout the United States and engages in the marketing, selling and administration of preneed and/or at need cremation services and merchandise. Defendant Neptune Society's preneed program enables clients to preplan and prepay for cremations services and at need programs include arrangement of cremation services at the time of need.

38.    Defendant Simplicity Burial & Cremation, Inc. f/k/a Oceanside Family Funeral Home ("Simplicity") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 287 High Street, Newburyport, Massachusetts. Simplicity was formerly known as Oceanside Family Funeral Home with a principal place of business at 34 Lafayette Road, Salisbury, Massachusetts. Defendant Wallace is a part owner of Simplicity.

39.    Plaintiffs hereby specify reserve and designate additional funeral homes and cremation societies that utilized the services of Bayview Crematory as Does 1 through 50, inclusive, as defendants herein. The true names, identities and capacities of the defendants sued as Does herein are presently unknown to Plaintiffs, which reserves the right to amend to incorporate their true names, identities and capacities.

40.    Each of the defendants named in ¶¶29-39 are herein collectively referred to as the "Funeral Home Defendants." Each of the Funeral Home Defendants utilized the services of defendant Bayview Crematory during the class period.

- 6 -

## JURISDICTION AND VENUE

41. The Court has original jurisdiction over this matter, pursuant to 28 U.S.C.S. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which at least one Plaintiff is a citizen of a different state than at least one defendant.

42. Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because Plaintiffs as well as many of the Funeral Home Defendants reside in this district of Massachusetts, as they conduct business in this district within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this district of Massachusetts.

43. Many of the defendants reside, are found, have an agent, or have transacted substantial business within the District of Massachusetts. Many of the material acts alleged herein occurred within the District of Massachusetts.

## CLASS ACTION ALLEGATIONS

44. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs bring this action both in their individual capacities, and as a class action against defendants, on behalf of themselves and: (i) all persons who controlled the disposition of the remains of any decedents delivered for cremation to defendant Bayview Crematory; (ii) all persons who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to defendant Bayview Crematory; and (iii) the estates of the decedents and the representatives thereof (the "Class") during the period commencing at a date certain, presently unknown to Plaintiffs, and continuing through February 23, 2005 (the "Class Period"). Excluded from the Class are defendants, including, the members of the defendants' families, any entity in which any defendant has a controlling interest, or which is a parent or

- 7 -

subsidiary of, or which is controlled by, any defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of any of the defendants.

45.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class.

46.    Common questions of law and fact exist as to all Class members and predominate over any questions which affect only individual Class members. These common questions of law and fact include:

(a)    whether contrary to their contractual, fiduciary and non-delegable duties, defendants systematically and commonly failed to accomplish the cremation and disposition process with dignity and respect expected of them by public sensibilities;

(b)    whether defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of decedents in a manner offensive to human sensibilities and/or expressly prohibited by law; and

(c)    whether the Funeral Home Defendants turned a blind eye or otherwise failed to inspect, supervise, monitor or oversee Bayview Crematory's practices.

47.    Plaintiffs' claims are typical of the claims of the Class members they seek to represent in that Plaintiffs and each Class member sustained, and continue to sustain, damages arising from defendants' wrongdoing. Plaintiffs' damages, as well as the damages of each Class member, were caused by defendants' wrongful conduct as alleged herein.

48.    Plaintiffs will fairly and adequately protect the interests of those Class members they seek to represent and have no interests that are antagonistic to the interests of any other Class

- 8 -

member. Plaintiffs have retained counsel who have substantial experience and success in complex litigation, including the litigation of class actions and consumer protection claims in the class action context.

49.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the damages suffered, and continued to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

50.    In addition, the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## FACTUAL ALLEGATIONS

### Bayview Crematory Mishandled and Commingled Corpses

51.    Throughout the Class Period, Bayview Crematory (which operated without a license since at least 1999) picked up bodies, cremated them, and returned the ashes to the Funeral Home Defendants for the low price of $190. If the Funeral Home Defendants followed industry practice and transported the bodies of the decedents themselves, it would cost as much as $265. Bayview Crematory's pickup-and-delivery policy allowed the Funeral Home Defendants to either lower their prices or sharply increase their profits.

52.    The Funeral Home Defendants, in order to either save the small sum of approximately $75 per deceased body, entrusted the remains of the loved ones of Plaintiffs and the other Class

- 9 -

members to Bayview Crematory even though that meant that the Funeral Home Defendants would

have to turn over control of bodies under their charge. Reputable funeral home operators would not

use Bayview Crematory because they did not feel comfortable turning over control of the bodies of

the deceased to Bayview Crematory.

53.    For example, in a June 29, 2003 article titled, "N.H. Firm Offers Lift to Funeral

Homes' Bottom Line But Questions, Complaints Are Raised Against Operator," *The Boston Globe*

reported the following:

> Robert Biggins, the owner of the Magoun-Biggins Funeral Home in Rockland, said
> he had no personal knowledge of Bayview Crematory **but was troubled by the idea
> of relinquishing control of a body under his charge.** He said families turn over a
> loved one to his funeral home, not to a crematory they know nothing about. He said
> the Tri-State Crematory in Noble, Ga., also operated a pickup and delivery system,
> which shielded it from funeral home scrutiny. Investigators last year found more
> than 300 decomposed and mummified bodies in the woods surrounding Tri-State
> Crematory.
>
> **John Anderson**, owner of Anderson-Bryant Funeral Home in Stoneham, **said
> Bayview's approach concerned him**. He said his funeral home prefers to take
> bodies to a crematory and watch the whole process. "That eliminates the problem
> they had in Georgia," he said.

[Emphasis added.]

54.    Regardless of the price charged for their services, defendants, as well as the entire

cremation and funeral home industry, have an ethical code which demands decorum and respect in

handling human remains. However, the Funeral Home Defendants knew, should have known, or

recklessly and/or negligently disregarded, that Bayview Crematory failed to abide by this ethical

code.

**Defendant Wallace Was Suspended for Five Years for Unprofessional Conduct**

55.    On August 25, 2004, the Board of Regulation of Funeral Directors and Embalmers

handed defendant Wallace a five-year suspension as a result of unprofessional conduct and deceptive

practices, including one case where he refused to complete funeral arrangements for a client because

- 10 -

she had purchased a lower-priced casket elsewhere. Defendant Wallace lost his licenses as an embalmer and funeral director for violating a number of rules which regulate the way funeral directors interact with customers.

56.    According to the 53-page decision from the Board of Regulation of Funeral Directors and Embalmers (the "Decision"), Wallace attempted **to cover up his transgressions** and was unwilling to take the charges against him seriously. In fact, **Wallace had to be reprimanded and asked not to laugh during witness testimony**.

57.    The Decision noted that: "Respondent claims that he made many 'mistakes' which do not rise to the level of gross misconduct .... If there were only one mistake, that argument might hold water. However, what he terms mistakes were a **litany of violations** of the board's rules and regulations."

58.    Accordingly the board found Wallace violated a large number of board regulations and rules.

59.    The charges against Wallace arose primarily from three complaints. One of the complaints claimed that Wallace had embalmed a body in October 2001 but refused to handle the rest of the funeral arrangements after learning the deceased's daughter had purchased a lower-priced casket from another company. Wallace's actions violated Federal Trade Commission rules that state that funeral homes cannot decline to do business with a customer who purchased a casket from another vendor. According to the Decision, Wallace then held the body hostage and refused to release it until he received a certified check for $1,710, even though that charge was not justified.

60.    Another complaint accused Wallace of reneging on a prepaid funeral contract. Although the deceased's mother had paid $4,375 in 1990 for a contract that she assumed would cover the cost of her funeral, Wallace improperly charged the deceased's next of kin an additional

- 11 -

$1,200 to $1,400 and also tried to substitute the casket selected by the deceased with a casket of lesser quality.

61.     Wallace was also disciplined for his ownership of the Bayview Crematory in conjunction with his ownership shares in Hart-Wallace Funeral Home and Simplicity. The board concluded Wallace violated Massachusetts regulations barring funeral directors from owning cemeteries or crematories. According to the Decision, Wallace tried to cover up his violation of the regulations in September 2002 by selling his interest in the crematory to his mother for $1 while continuing to run the facility. "The number of misrepresentations by Derek Wallace in connection with this dual ownership is staggering," the board said in its Decision.

62.     Additionally, defendant Hart-Wallace Funeral Home was shut down as a result of defendant Wallace's conduct.

**The Police Shut Down Bayview Crematory Due to a Series of Gruesome Finds**

63.     On February 23, 2005, the New Hampshire police, executing a warrant for financial records at Bayview Crematory, made a series of gruesome finds at the crematory prompting them to shut it down. Police officers found, among other things: unlabeled and unidentified urns filled with cremated human remains; two bodies stuffed into a single oven; a body rotting in a broken freezer; and a trash bin heaped with charred pacemakers, hip replacements, and prosthetics.

64.     An article in *The Boston Herald* titled "Cops find rotting corpse at crematory" on February 24, 2005 stated in part:

"We discovered we had a decaying body in a broken cooler," Rockingham County Attorney James Reams said.

The body had decomposed there for seven to 10 days at 78 degrees.

Reams said they also found a worker burning two "intermingled" bodies at the same time in the same oven, as well as blood and other medical waste in a Dumpster outside the crematorium that records show has operated unlicensed since at least 1999.

- 12 -

65. Investigators probing the Bayview Crematory noted that Bayview's practices were so shoddy that hundreds of New England families could not be sure that the high-volume, low-priced, unlicensed crematorium gave them back the right ashes. Bayview Crematory handled the remains of hundreds of Massachusetts residents, as well as cadavers from Harvard Medical School, despite operating without a required license for six years. The Rockingham County Attorney, Jim Reams, who is in charge of the case, admitted that: "There is nothing we can do to assure [families] that they have the right remains."

66. According to the Funeral Consumers Alliance of Eastern Massachusetts, a watchdog group that advises consumers, "The funeral homes that used Bayview betrayed the confidence of the families they served."

67. Indeed, rather than having a funeral director accompany a body from funeral home to crematorium, Bayview simply picked up bodies on its own, cutting costs substantially for the Funeral Home Defendants and generating a large amount of business from funeral homes in New Hampshire, Massachusetts and other states.

68. The Funeral Home Defendants are responsible for the atrocities that occurred at Bayview Crematory because they knew, or recklessly and/or negligently disregarded, the disrespectful way that Bayview Crematory treated the remains of the loved ones of Plaintiffs and the Class. A February 26, 2005 article in *The Boston Globe* titled "Families' Doubt on Ashes Led to Lawsuits Crematory Was Sued Last Year in Boston," stated in part:

> The focus for now is still on Bayview, a low-price crematory that is not held in high regard, according to a funeral director at one Boston-area funeral home, who said Bayview was avoided because of the way it did business.
>
> **"It was pretty well-known throughout the industry that they were a shoddy operation," said the director, who spoke on condition of anonymity.**

- 13 -

"They would send a box truck around, and they would swing through the area twice a week," he said. "They would tag a box, put the body in it, and continue on their way."

[Emphasis added.]

69.    On March 20, 2005, it was reported in an article over *The Associated Press State & Local Wire* titled "Unlicensed crematorium operator faces more complaints" that defendant Wallace was being investigated on two new complaints brought by the Massachusetts Division of Professional Licensure. One complaint alleges he double-billed a family of $600 that had been prepaid by their dead relative. The other alleges a falsified signature of a Massachusetts medical examiner was on a death certificate.

70.    On April 18, 2005, it was reported that ashes in four urns seized at Bayview Crematory in February 2005 will probably never be identified because the paperwork seized at Bayview did not reveal whose remains were in the urns. After a human body is cremated, there is no way to accurately identify whose remains they are.

71.    On May 13, 2005, authorities found the remains of 25 bodies in urns when they raided the Hart-Wallace Funeral Home and Simplicity Burial and Crematory. Defendant Wallace owns Hart-Wallace Funeral Home and co-owns Simplicity Burial and Crematory.

## Criminal Charges Were Brought Against Bayview Crematory and Defendant Wallace and Several Cohorts in Connection with the Wrongful Conduct at Bayview Crematory

72.    On or about June 30, 2005, in connection with the wrongdoing at Bayview Crematory alleged herein, Defendant Wallace was arrested by the Massachusetts State Police and was charged as a fugitive from justice, and charged with two counts of theft by deception and one count of abuse of corpse. James Fuller ("Fuller"), a Bayview Crematory employee and Dr. Putnam Breed ("Dr. Breed"), a District Medical Examiner for the State of Massachusetts, were also arrested in connection with the wrongdoing at Bayview. Fuller was charged with two counts of fraudulent

- 14 -

handling of recordable writing (*i.e.*, forgery) and one count of abuse of corpse. Dr. Breed was charged with two counts of fraudulent handling of recordable writing and one count of theft by deception.

73.    Prior to the three arrests described above, the police conducted an investigation of Bayview Crematory. Included in the findings was the fact that over 300 cremations were performed by Bayview Crematory where the next of kin signed an authorization form for another crematorium to perform the cremation. Thus, even though the next of kin authorized and expected another crematorium, the funeral homes and cremation societies used by those families utilized Bayview Crematory's services. In many cases, defendant Wallace owned the funeral homes that used the services of Bayview Crematory even thought the next of kin chose a different crematorium. Prosecutors said that defendant Wallace, defendant Linda Stokes, and defendant Larry Stokes schemed to funnel clients to illegal cremations at Bayview Crematory. "They created an impression and were promising that they were doing legal cremations when they knew they weren't," said Jim Reams, Rockingham County Attorney in Massachusetts.

74.    On July 19, 2005, a Grand Jury handed down 21 indictments against defendant Wallace, Fuller, and Dr. Breed in connection with the wrongdoing at Bayview. Defendant Wallace was indicted on four counts of theft by deception and one count of abuse of a corpse. Fuller was indicted on four counts of fraudulent handling of recordable writings and two counts of abuse of a corpse. Dr. Breed was indicted on nine counts of fraudulent handling of recordable writings and two counts of theft by deception.

75.    On or about August 11, 2005, indictments were handed down against defendant Bayview Crematory as well as additional indictments against defendant Wallace. Defendant Wallace was indicted on four charges of theft by deception, bringing the total number of charges

- 15 -

against him to seven. Seven charges were handed down against Bayview; two felony counts of theft by deception; and five misdemeanor charges for failing to file cremation certificates with the town of Seabrook.

76.     The grand jury also levied more charges against Fuller; eight counts of theft and fraud, bringing the total number of charges against him to eleven.

## The Funeral Home Defendants Were Obligated to Conduct Due Diligence on Bayview Crematory

77.     Three of the leading cremation and funeral associations, the Cremation Association of North America ("CANA"), the International Cemetery & Funeral Association ("ICFA"), and the National Funeral Directors Association ("NFDA") engaged in a cooperative effort and set forth basic due diligence steps for funeral homes when dealing with crematories. These due diligence steps were presented in a "Due Diligence for Funeral Homes Utilizing Third Party Crematories" package (the "Due Diligence Package") and were made available to all funeral homes and cremation providers, including the Funeral Home Defendants. The Due Diligence Package recommended that each funeral home follows the due diligence steps in order to "protect the cremation families it serves."

78.     The Introduction of the Due Diligence Package stated that each funeral home "has a responsibility to the family to ensure that the crematory will carry out the cremation in a legal, professional and ethical manner." Importantly, the Due Diligence Package clearly stated that the "funeral home should deliver the remains to the crematory using its own personnel." Instead of adhering to this important principle, each of the Funeral Home Defendants utilized Bayview Crematory to pick up remains from the Funeral Home Defendants and then drop off the cremated remains when the process was completed.

- 16 -

79.    Additionally, the Due Diligence Package stated that each funeral home should have a "due diligence" file on each outside crematory the funeral home uses and that an "important aspect of due diligence is a review of the licenses and operational records of the crematory." It was recommended that the records request should be updated at least once a year. Had any of the Funeral Home Defendants reviewed the licenses of Bayview Crematory, they would have readily determined that Bayview Crematory had operated without a license since at least 1999. Finally, the Due Diligence Package recommended that each funeral home should conduct an unannounced inspection of the crematory at least once a year and document their findings.

80.    Furthermore, funeral home directors agree that a funeral home should conduct the proper due diligence prior to selecting a crematorium. Fred Healy, funeral director with the Morse-Bayliss Funeral Home in Lowell, MA, and Jim Dolan, a funeral director with Dolan Funeral Home in Chelmsford, MA, both said that exploring a company's reputation, meeting the owners, and inspecting the business are the best way to check out a firm. Dolan said, "It's just like everything else in life. You've got to be diligent." Jim O'Donnell Jr., co-owner of the James F. O'Donnell & Sons Funeral Home in Lowell, MA, said making sure the facility is licensed is also important, as is a willingness to accept a higher price in exchange for knowing remains are treated properly. O'Donnell said that his employees personally deliver bodies to the Haverhill crematory used by his funeral home so they know the bodies are treated properly up to that point.

**The Funeral Home Defendants Are Liable for Selecting Bayview Crematory**

81.    Throughout the Class Period, the Funeral Home Defendants executed contracts to perform funeral related services in connection with the passing of the loved ones of Plaintiffs and the Class members, including cremation services. These services were to be performed in a respectful manner. Each decedent's remains were to be cremated with dignity and respect in keeping with public sensibilities, the standards of practice-care and in accordance with the law.

- 17 -

82. Motivated by greed, the Funeral Home Defendants each used defendant Bayview Crematory to carry out the cremation process for the benefit of Plaintiffs and the Class. However, the Funeral Home Defendants chose to have the cremations take place in a facility that was never properly approved or established under any appropriate state regulations or laws and did not have the authority to do the cremations that were conducted.

83. Contrary to their contractual, fiduciary and non-delegable duties, defendants commonly and systematically failed, throughout the Class Period, to accomplish the cremation and disposition process with the dignity and respect expected of them by public sensibilities and required of them by law. Defendants, without describing their actual practices or obtaining express written permission from Plaintiffs or any Class members, knowingly, recklessly and/or negligently permitted and facilitated the disrespectful, improper and illegal mishandling and improper cremations, desecration, abuse, and commingling of the remains of the decedents.

84. Throughout the Class Period, defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

85. The Funeral Home Defendants failed to inspect, supervise, monitor or oversee Bayview Crematory's practices although they were under a duty to do so and thereby breached their duties to Plaintiffs and the Class. The Funeral Home Defendants also failed to return the cremated remains of family members.

86. The failure of each and every Funeral Home Defendant to discharge its duty of special care to ensure that the remains entrusted to their care were handled respectfully and in accordance with the wishes of the families of the deceased contributed to and caused harm to Plaintiffs and the Class. Had any one of the Funeral Home Defendants inspected, supervised or

- 18 -

monitored Bayview Crematory's cremation practices, as this special duty requires, Bayview Crematory's practices would have been discovered and stopped before widespread injury took place. Because each and every Funeral Home Defendant failed to meet its duty, Bayview Crematory was able to continue its practice of mishandling, commingling and desecrating the remains of the loved ones of family after family. Through defendants' willful, reckless, and/or negligent failure to discover and/or disclose the true nature of the facilities, equipment, practices, and procedures utilized at Bayview Crematory, each defendant contributed to and caused harm to every member of the Class by enabling and facilitating the mishandling, commingling and desecration of the decedents' remains.

87.    Additionally, each of the Funeral Home Defendants owned and or controlled by defendant Wallace and/or Linda and Larry Stokes had direct knowledge of the wrongful conduct at Bayview Crematory and intentionally steered business to Bayview Crematory for financial gain irrespective of the wrongful acts described herein.

**Each of the Plaintiffs Was Damaged by Defendants' Wrongful Conduct**

American Cremation Society

88.    The remains of decedent, Joan Yvone Delia, who died on October 5, 2004, were entrusted at or about that time to defendant American Cremation Society, Inc., by Plaintiff Robert Delia, her husband. Joan Yvone Delia was cremated by Bayview Crematory on or about October 11, 2004.

Commonwealth Cremation & Shipping Service

89.    The remains of decedent Tyra I. Peterson Andersen, who died on December 18, 2000, were entrusted at or about that time to defendant Commonwealth Cremation & Shipping Service, Inc., by Plaintiff Alan C. Andersen, her son. Tyra I. Peterson Andersen was cremated by Bayview Crematory on or about December 22, 2000.

- 19 -

90.    The remains of decedent Claire A. Ignoto, who died on March 17, March 2004, were entrusted at or about that time to defendant Commonwealth Cremation & Shipping Service, Inc., by Plaintiff Marie Ignoto, her daughter. Claire A. Ignoto was cremated by Bayview Crematory on or about March 20, 2004. Defendant Commonwealth Cremation & Shipping Service, Inc. represented to Plaintiff Claire A. Ignoto that defendant Bayview Crematory was a reputable crematorium.

Cremation Society of Massachusetts

91.    The remains of decedent Joan M. Foster, who died during October 2004, were entrusted at or about that time to defendant Cremation Society of Massachusetts, by Plaintiff John Foster, her son. Joan M. Foster was cremated by Bayview Crematory on or about October 20, 2004 and assigned crematory # 4629.

Dracut Funeral Home

92.    The remains of decedent Denise Dumais, who died during January 2000, were entrusted at or about that time to defendant Dracut Funeral Home Incorporated, by Plaintiff Steven Dumais, her brother. Denise Dumais was cremated by Bayview Crematory on or about January 7, 2000.

93.    The remains of decedent Gloria Dubois-Johnson, who died on April 7, 2001, were entrusted at or about that time to defendant Dracut Funeral Home Incorporated, by Plaintiff David Johnson, her husband. Gloria Dubois-Johnson was cremated by Bayview Crematory on or about April 11, 2001.

Hamel, Wickens & Troupe Funeral Home

94.    The remains of the decedent, William Anthony Hall, who died on September 24, 2002, were entrusted at or about that time to defendant Hamel, Wickens & Troupe Funeral Home, by Plaintiff Britton Hall, his son. William Anthony Hall was cremated by Bayview Crematory soon thereafter.

95.     The remains of the decedent, Edward Galvin, who died on April 29, 2001, were entrusted at or about that time to defendant Hamel, Wickens & Troupe Funeral Home, by Plaintiff Edward Galvin, Jr., his son. Edward Galvin was cremated by Bayview Crematory soon thereafter.

Hamel, Wickens & Troupe Funeral Home and American Cremation Society

96.     The remains of the decedent, Gloria Bourassa, who died on July 24, 2002, were entrusted at or about that time to defendants American Cremation Society and Hamel, Wickens & Troupe Funeral Home, by Plaintiff Suzanne Bourassa, her daughter. Gloria Bourassa was cremated by Bayview Crematory soon thereafter.

Hamel, Wickens & Troupe and Cremation Society of Massachusetts

97.     The remains of decedent Celeste Fowler, who died on March 21, 2004, were entrusted at or about that time to defendant Cremation Society of Massachusetts and defendant Hamel Wickens & Troupe, by Plaintiff Dennis Fowler, her father. Celeste Fowler was cremated by Bayview Crematory on or about March 25, 2004. Plaintiff Dennis Fowler realized that he did not receive his daughter's ashes, or that his daughter was cremated with someone else, when he found a metal cap for a tooth mixed with Celeste Fowler's ashes, because Celeste did not have any metal caps before she died.

98.     The remains of decedents, Rose A. Tomaso, who died on December 1, 2000, and Charles Tomaso, who died on October 3, 2002, were entrusted at or about that time to defendants Cremation Society of Massachusetts and Hamel, Wickens & Troupe Funeral Home, by Plaintiff Donna M. Tomaso, their daughter. Rose A. Tomaso and Charles Tomaso were cremated by Bayview Crematory soon thereafter.

- 21 -

Hart-Wallace Funeral Home

99.     The remains of the decedent, Theresa Ferris, who died on January 31, 2005, were entrusted at or about that time to defendant Hart-Wallace Funeral Home, by Plaintiff Shaun Ferris, her son. Theresa Ferris was cremated by Bayview Crematory on or about February 5, 2005.

100.    The remains of the decedent, Alice Scafard, who died on January 1, 2005, were entrusted at or about that time to defendant Hart-Wallace Funeral Home, by Plaintiff Eleanor Poole, her daughter. Alice Scafard was cremated by Bayview Crematory soon thereafter.

Hart-Wallace Funeral Home & Neptune Society

101.    The remains of the decedent, Gertrude L. Scheid, who died on January 15, 2005, were entrusted at or about that time to defendant Hart-Wallace Funeral Home and defendant Neptune Society, by Plaintiff Patricia Hannigan, who was a close family friend who held power of attorney over Gertrude's affairs. Gertrude L. Scheid was cremated by Bayview Crematory on or about January 27, 2005. It took approximately 12 to 15 days for Bayview Crematory to return Gertrude's ashes.

Simplicity

102.    The remains of the decedent, Herbert Howell Eames, Sr., who died on February 29, 2004, were entrusted at or about that time to defendant Simplicity, by Plaintiff Sara-Anne Eames, his daughter. Herbert Howell Eames, Sr., was cremated by Bayview Crematory on or about March 2, 2004.

103.    The remains of the decedent, Donald Lattime, who died during December 2004, were entrusted at or about that time to defendant Simplicity, by Plaintiff Dawn Lattime, his daughter. Donald Lattime was cremated by Bayview Crematory on or about December 9, 2004.

104.    The remains of the decedent, Judith P. Eastman, who died during December 2004, were entrusted at or about that time to defendant Simplicity, by Plaintiff Kathleen McDonough, her

- 22 -

daughter, Plaintiff Tara McDonough, her granddaughter, and Plaintiff John Carlson, her brother. Judith P. Eastman was cremated by Bayview Crematory on or about December 6, 2004. Simplicity charged approximately $2,000 for Judith's cremation.

105.    The remains of the decedent, Maria A. Carlson, who died during 1999, were entrusted at or about that time to defendant Simplicity, by Plaintiff Kathleen McDonough, her granddaughter, Tara McDonough, her great-granddaughter, and John Carlson, her son. Maria A. Carlson was cremated by Bayview Crematory soon thereafter.

106.    Plaintiffs are now informed and believe, and thereon allege, that their loved ones were subjected to the unlawful and improper practices of Bayview Crematory. Their loved-ones' remains were not cremated with dignity and respect or in accordance with their wishes or the law. Instead, their remains were subjected by the defendants to commingling, mishandling, abuse and other improper practices and processes and, as a proximate result, were desecrated, mishandled and/or commingled together with the remains of other Class members' loved ones.

107.    Because the defendants exercised complete control over the remains of the decedents and due to defendants' improper and unlawful desecration of the remains, many families whose loved ones were given to defendant Bayview Crematory will never know the nature of the treatment the remains of their loved ones were subjected to by Bayview Crematory.

108.    Plaintiffs' claims arose out of a series of transactions or occurrences that have a question of law or fact common to all defendants. The series of transactions or occurrences that have a common question of law or fact is the series of contracts between Plaintiffs and the other Class members and the Funeral Home Defendants. The series of occurrences that have a common question of law or fact are the events at defendant Bayview Crematory's property (a common locale) involving the mishandling of Plaintiffs' and the Class members' decedents' remains.

- 23 -

109.    As a proximate result of: (a) defendants' representations that the decedents' remains would be and had been cremated in the authorized and requested manner with dignity and respect; (b) the defendants' possession and control of the remains of the decedents' remains and complete control over the manner of treatment of these remains; and (c) the concealment by the defendants of the mistreatment, mishandling, desecration and abuse of the remains, Plaintiffs and the Class members did not discover that their loved one's remains were subjected to the defendants' misconduct until within one year preceding the filing of this Complaint.

**COUNT I**

**EQUITABLE (INJUNCTIVE AND/OR DECLARATORY) RELIEF
(AGAINST ALL DEFENDANTS)**

110.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

111.    Plaintiffs and the Class members and/or their decedents entered into written or oral contracts with the defendants to obtain and ensure the cremation of their loved ones in an individual, dignified, respectful and lawful manner. Plaintiffs and the Class members and/or their decedents were induced to enter into such contracts by the defendants' representations, which emphasized and assured the dignified and respectful manner in which the decedents' remains would be handled and cremated and omitted any information regarding the actual practices of Bayview Crematory or the defendants' failure to inspect, supervise or monitor Bayview Crematory. Plaintiffs and the Class members were the natural and intended beneficiaries of those written and oral contracts.

112.    Plaintiffs and the Class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

113.   During the Class Period, the defendants breached these contracts by failing to accomplish the cremation of the remains of the decedents in an individual, dignified, respectful and/or lawful manner.

114.   Instead, the defendants employed, authorized and/or allowed the employment of processes and practices resulting in the mishandling, abuse and commingling of the decedents' remains.

115.   The remains of the decedents were improperly and unlawfully handled while in the defendants' exclusive possession and control, without the authorization, knowledge, permission, consent or ratification of Plaintiffs or the Class members. The remains were abused, desecrated and commingled with each other and disposed of as no more than garbage, such that the integrity of the remains was violated and the remains were not returned to Plaintiffs and the Class for disposition. The decedents' remains were not afforded individual, respectful and dignified disposition and were, instead, mishandled, abused and desecrated.

116.   The named Plaintiffs and the Class members are charged by law, by their own perceived moral obligations and ethical duties, and by natural sentiments to accomplish the disposition of their decedents' remains as requested by the decedents, as set forth in the cremation contracts with the defendants, and in keeping with public sensibilities and the law.

117.   No adequate remedy at law exists to address the abuse of the decedents' remains and, due to the defendants' actions, there may be no way to undo the injustices that have been done. Worse, many family members who entrusted their departed loved ones to the defendants may never be able to learn the true fate of the decedents' remains.

118.   Accordingly, Plaintiffs, on behalf of themselves and the Class, request the following equitable relief:

- 25 -

(a)     A judicial determination and declaration of the rights of Plaintiffs and the Class and the responsibilities of the defendants with respect to the remains that are the subject of this action;

(b)     That the defendants be enjoined to return to Plaintiffs and the Class members any and all remains of decedents still in the Defendant Bayview Crematory's possession, custody or control so that respectful and dignified disposition of the remains may be accomplished;

(c)     That the defendants disclose to Plaintiffs and the Class, insofar as is possible, the whereabouts of the desecrated and commingled remains and residue containing commingled remains of decedents delivered to Bayview Crematory during the Class Period so that Plaintiffs and the Class may carry out the dignified and respectful disposition of same;

(d)     That the property upon which the remains were discovered and in which they were interred, desecrated and commingled be held in trust for the benefit of the Class pending the ultimate disposition by the Court;

(e)     That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and

(f)     That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and respectful disposition of the decedents' remains as may be possible.

## COUNT II

### BREACH OF CONTRACT
### (AGAINST THE FUNERAL HOME DEFENDANTS)

119.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

- 26 -

120.    Plaintiffs and the Class members and/or their decedents entered into written or oral contracts with the Funeral Home Defendants to obtain and ensure the cremation of the decedents in an individual, dignified, respectful and lawful manner. The expectations of the named Plaintiffs and the Class members, as reasonable persons, were that these contracts, expressly or by reasonable implication, assured the legal, dignified and respectful disposition of their decedents' remains. These contracts uniformly omitted material information regarding Bayview Crematory's actual practices, Bayview Crematory's unlicensed status, and the Funeral Home Defendants' failure to inspect, monitor or supervise Bayview Crematory. Plaintiffs and the Class members were the natural and intended beneficiaries of those written and oral contracts.

121.    Plaintiffs and the Class members and/or their decedents timely performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

122.    The defendants breached their express written and oral contracts, implied contracts with and promises to Plaintiffs, the Class and their decedents by improperly handling or causing the improper handling of the decedents' remains as described herein, and by failing to disclose the true nature of Bayview Crematory's practices and procedures.

123.    The class members were the natural and intended beneficiaries of the contracts with the defendants regarding funeral services to be provided for the decedents.

124.    As a proximate result of the defendants' breaches of contract, Plaintiffs and the Class and/or their decedents have incurred damages in the amounts they previously paid the defendants for cremation services improperly performed, and, as a further result of the defendants' breaches of contract, Plaintiffs and the Class have incurred and will incur additional monetary losses in attempting to recover, identify and respectfully dispose of the decedents' remains.

- 27 -

## COUNT III

### BREACH OF FIDUCIARY DUTY/SPECIAL DUTY
### (AGAINST ALL DEFENDANTS)

125.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

126.    By offering funeral-related services that Plaintiffs and the Class reasonably expected would be performed or accomplished in a dignified and respectful manner, the defendants knowingly and intentionally entered into a special relationship of trust and confidence with Plaintiffs, the Class and their decedents. In entering into agreements to effectuate and complete the disposition of remains, the defendants undertook to respectfully, responsibly and lawfully discharge these duties including specifically the duty to perform disposition services in a dignified and respectful manner, within the bounds of industry practice, and in accordance with all applicable law and regulations.

127.    The defendants were, therefore, charged with a fiduciary or special duty to Plaintiffs, the Class and their decedents to fully and faithfully perform the disposition duties.

128.    By mishandling, abusing and desecrating the decedents' remains as described herein, by negligently or recklessly entrusting Bayview Crematory with the bodies of Plaintiffs' and the Class's loved ones, and by failing to properly perform or accomplish those services that the defendants had expressly or impliedly agreed to perform, the defendants, and each of them, breached the fiduciary duties owed by them to Plaintiffs, the Class and the decedents.

129.    As a direct and proximate result of the defendants' breaches of their fiduciary duties, Plaintiffs and the Class have been damaged and injured as set forth above.

130.    Further, the failure of each and every Funeral Home Defendant to faithfully perform the disposition duties, including the failure to ensure that its agent, Bayview Crematory, properly and respectfully handled the decedents' remains, contributed to and caused injury to Plaintiffs and the

- 28 -

Class as a whole because but for the failure of each Funeral Home Defendant properly to discharge its duty, Bayview Crematory's horrific practices would have been discovered and stopped before widespread injury took place.

131.    Finally, the Funeral Home Defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Bayview Crematory Defendants of the adulterated nature of the cremated remains returned by the Bayview Crematory Defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Bayview Crematory, and thereby allowing Bayview Crematory's fraudulent practices to continue.

132.    The defendants' conduct in breach of their fiduciary obligations was intentional, knowing, done with oppression, fraud and malice and/or done in reckless and conscious disregard of the rights of Plaintiffs and the Class. Plaintiffs and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing, enabling, aiding and abetting, or recklessly allowing similar indecencies upon human remains.

## COUNT IV

### FRAUDULENT CONDUCT
### (AGAINST BAYVIEW CREMATORY DEFENDANTS)

133.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

134.    The conduct of the Bayview Crematory operations by the Bayview Crematory Defendants, as described in this Complaint, operated as a fraud upon Plaintiffs and the Class in that the actual conduct of these defendants was uniformly and actively concealed from Plaintiffs and the Class throughout the class period.

- 29 -

135.    Plaintiffs' reliance on all defendants' proper conduct of every stage of the disposition process was justified and reasonable in that the Funeral Home Defendants, with whom Plaintiffs and the Class dealt, and to whom they entrusted their loved ones' remains for disposition, held themselves out to be reputable, experienced and trustworthy entities in the business of funeral cremation and related services.

136.    Plaintiffs and the Class first became aware and could first reasonably have become aware of the concealed misconduct of the Bayview Crematory Defendants on or about February 23, 2005.

137.    As a proximate result of the Bayview Crematory Defendants' fraudulent conduct, fraud and deceit, Plaintiffs and the Class have suffered damages and injuries described herein.

138.    Bayview Crematory Defendants' fraud and deceit, consisting of: 1) their concealment of their unlicensed status; 2) their fraudulent conduct in commingling, desecrating, and adulterating the human remains entrusted to them and the resulting cremated remains; and 3) their uniform concealment and nondisclosure of this misconduct, and their implicit representation, through the return of separately packaged cremated remains, that cremations had been properly accomplished, concealing from Plaintiffs and the Class in such a way that it was difficult or impossible for Plaintiffs to discover the intrinsically commingled and adulterated nature of the cremated remains, was intentional, knowing, done with oppression, fraud and malice and done in reckless and conscious disregard of the rights of Plaintiffs and the Class. Plaintiffs and the Class are, therefore, entitled to punitive and exemplary damages from said defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

- 30 -

## COUNT V

### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

139.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

140.    At all material times, the defendants owed a duty to Plaintiffs and the Class to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

141.    The defendants negligently and carelessly failed to discharge these duties.

142.    As a proximate cause of the defendants' negligence, Plaintiffs and the Class members have been damages and injured as described herein.

## COUNT VI

### WILLFUL INTERFERENCE WITH REMAINS AND
### INTENTIONAL MISHANDLING OF A CORPSE
### (AGAINST ALL DEFENDANTS)

143.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

144.    Plaintiffs and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

- 31 -

145.    Plaintiffs and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

146.    The defendants had the opportunity and duty to comply with Plaintiffs' and the Class members' expressed wishes.

147.    The defendants, however, willfully and deliberately mishandled the decedents' remains, and/or caused, contributed to, or aided and abetted the Bayview Crematory Defendants' mishandling by knowingly failing to assure that Bayview Crematory's operations were conducted properly, respectfully, and in accordance with all applicable law and regulations, and thereby interfered with the rights and responsibilities of Plaintiffs and the Class to effect the proper disposition of the remains with utmost dignity, in accordance with the law and their wishes, requests and beliefs.

148.    The defendants' mishandling of the remains and their interference with the rights of Plaintiffs and the Class precluded Plaintiffs and the Class from exercising their rights and performing their responsibilities of appropriately disposing of the remains of their decedents.

149.    As a direct, known, foreseeable and proximate result of the intentional mishandling of the remains by the defendants, Plaintiffs and the Class have suffered and continue to suffer injury and damages.

150.    In mishandling or causing or contributing to the mishandling of the remains of the decedents, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of Plaintiffs and the Class. Plaintiffs and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

- 32 -

## COUNT VII

## NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE (AGAINST ALL DEFENDANTS)

151. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

152. Plaintiffs and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

153. Plaintiffs and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

154. The defendants had the opportunity and duty to comply with Plaintiffs' and the Class member's expressed wishes.

155. The defendants negligently, recklessly and carelessly mishandled the decedents' remains and interfered with the rights and responsibilities of Plaintiffs and the Class to dispose of the remains in ways unauthorized by Plaintiffs and the Class and their decedents, ways that were contrary to the law and contrary to their wishes, requests and beliefs.

156. The defendants' conduct was accomplished through a common course and practice of improper handling of remains, resulting from the defendants' own negligence and negligent entrustment of the decedents' remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the defendants' negligent failure to control, supervise and investigate the actions of such persons and entities.

157. As a direct and proximate result of the defendants' negligent interference with the decedents' remains, Plaintiffs and the Class have suffered and continue to suffer damages and injuries.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

158.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

159.    The defendants' conduct directed toward Plaintiffs and the Class members, as described herein, was intentional, knowing, and/or reckless. It is so outrageous that it is not tolerated by civilized society.

160.    As a direct and proximate result of the defendants' conduct, Plaintiffs and the Class suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

161.    In their conduct, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of Plaintiffs and the Class. Plaintiffs and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT IX

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

162.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

163.    At all material times, the defendants owed a duty to Plaintiffs and the Class to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the

- 34 -

defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

164.    The defendants negligently and carelessly failed to discharge these duties.

165.    As a proximate cause of the defendants' negligence, Plaintiffs and the Class members have suffered serious and severe mental injuries and emotional distress that no reasonable person could be expected to adequately cope with or endure.

## COUNT X

## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

166.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

167.    Each and every of the defendants conspired to accomplish an unlawful purpose.

168.    Each and every of the defendants knew at all times relevant herein that the conduct of the other defendants, including the Bayview Crematory Defendants, constituted a breach of duty and gave substantial assistance or encouragement to the other defendants so to conduct themselves. Each defendant offered substantial assistance and/or encouragement to the other defendants with the knowledge that such assistance and/or encouragement was contributing to a common tortuous plan.

169.    As a result of defendants' conspiracy to accomplish an unlawful purpose, Plaintiffs and the Class members have suffered harm.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief, on behalf of themselves and the Class:

- 35 -

(a)    Certification of this action as a class action, appointment of Plaintiffs as Class representatives and undersigned counsel as class counsel;

(b)    An award of equitable, injunctive and declaratory relief described herein, including judicial supervision of the defendants and a judicial determination of the rights and responsibilities of the parties regarding the remains that are the subject to this action;

(c)    An award of compensatory damages in an amount deemed appropriate by the trier of fact, jointly and severally against the defendants;

(d)    An award of punitive damages, jointly and severally against the defendants;

(e)    The establishment of a constructive trust upon the defendants' property, revenues and/or profits for the benefit of the Class and disgorgement and restitution of the past revenues and/or profits to the class;

(f)    An award of prejudgment and post-judgment interest;

(g)    An award of costs, including but not limited to discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

(h)    Any other and further equitable relief this Court deems just and proper; and

(i)    Any other and further relief to which they may be entitled at law or in equity.

DATED:  September 20, 2005          SHAPIRO HABER & URMY LLP
                                    THOMAS G. SHAPIRO BBO #454680
                                    THEODORE M. HESS-MAHAN BBO #557109


                                    _____
                                    THEODORE M. HESS-MAHAN

                                    53 State Street
                                    Boston, MA  02109
                                    Telephone:  617/439-3939
                                    617/439-0134 (fax)

- 36 -

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
EVAN J. KAUFMAN
MARK S. REICH
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Attorneys for Plaintiffs Alan C. Andersen, Suzanne
Bourassa, John Carlson, Robert Delia, Steven
Dumais, Sara-Anne Eames, Shaun Ferris, John
Foster, Dennis Fowler, Edward Galvin, Jr., Britton
Hall, Patricia Hannigan, Marie Ignoto, David
Johnson, Dawn Lattime, Kathleen McDonough,
Tara McDonough, Eleanor Poole* and *Donna M.
Tomaso*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_Alan C. Andersen, et al. v. Bayview Crematory, LLC et al_____

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
|---|---|---|
| ___ | II. | 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. |
| _X_ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ___ | IV. | 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ___ | V. | 150, 152, 153. |

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

05-1 1 9 0 4 RCL

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

Lorraine Hunt v. Bayview Crematory et al., Civil Action No. 05-cv-11140-RCL_____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☐     NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES ☐     NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐     NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☐     NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☐     NO ☒

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division  ☒     Central Division  ☐     Western Division  ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division  ☐     Central Division  ☐     Western Division  ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐     NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Thomas G. Shapiro;  Theodore M. Hess-Mahan_____

ADDRESS _Shapiro Haber & Urmy LLP, 53 State Street, Boston, MA 02109_____

TELEPHONE NO. _(617) 439-3939_____

(Complaint 2 CategoryForm.wpd  - 10/17/02)

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ALAN C. ANDERSEN, et al.
(Additional Plaintiffs listed in caption)

## DEFENDANTS

BAYVIEW CREMATORY, LLC, et al.
(Additional defendants listed in caption)

**(b)** County of Residence of First Listed Plaintiff    Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas G. Shapiro; Theodore M. Hess-Mahan
Shapiro Haber & Urmy, 53 State St. Boston, MA 02109 (617) 439-3939

Attorneys (If Known)

05-11904 RCL

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
        Plaintiff

☐ 3   Federal Question
        (U.S. Government Not a Party)

☐ 2   U.S. Government
        Defendant

☒ 4   Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                       and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1   Original
        Proceeding

☐ 2   Removed from
        State Court

☐ 3   Remanded from
        Appellate Court

☐ 4   Reinstated or
        Reopened

☐ 5   Transferred from
        another district
        (specify)

☐ 6   Multidistrict
        Litigation

☐ 7   Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332(d)

Brief description of cause:
breach of contract, breach of fiduciary duty, misrepresentation, negligence, infliction of emotional distress,

## VII. REQUESTED IN
## COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
## IF ANY

(See instructions):    JUDGE LINDSAY, J.

DOCKET NUMBER 05-cv-11140-RCL

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 09/20/2005 | |

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____