## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS


ALAN C. ANDERSEN, et. al.,

       Plaintiffs,

v.                                          No. 05-11904-RCL

BAYVIEW CREMATORY, LLC, et. al.,

       Defendants.

_____/

## PLAINTIFFS' NOTICE OF FILING CORRECTED PROPOSED AMENDED COMPLAINT

NOW COME the Plaintiffs, by and through their undersigned counsel, and give notice of the filing of a Corrected Proposed Amended Complaint in these proceedings.  For purposes of clarification, the Plaintiffs state:

1.      On August 21, 2007, in response to the direction contained in the Court's Report and Recommendations [Docket # 103], the Plaintiffs filed their Motion for Leave to Amend Complaint [Docket # 105].  The Motion for Leave to Amend attached a proposed Amended Complaint [Exhibit 1 thereto].

2.      Immediately after the filing of the Motion for Leave to Amend, one of the proposed Plaintiffs sought to be added to these proceedings, Linda McCormick, advised counsel that she did not wish to add her claims to those presented to this Court in the Amended Complaint.

1

3.    This Court has not ruled on the pending Motion for Leave to Amend. Consequently, said Linda McCormick status is only that of a proposed party plaintiff and there is no basis to dismiss her claims under Rule 41.

4.    Based upon the fact that said Linda McCormick has no claim currently pending before this Court and no longer seeks to add her claims to these proceedings, the Plaintiffs file their corrected proposed Amended Complaint removing the proposed claims of said Linda McCormick.

Dated this 28th day of August, 2007.


Respectfully submitted,
Plaintiffs, by their attorneys


/s/ David H. Charlip
David H. Charlip (Florida Bar No.: 329932)
Charlip Law Group, LC
1930 Harrison Street, Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 (Fax)
dcharlip@charliplawgroup.com


/s/ Lisa Debrosse-Johnson
Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740
debrossejohnson@comcast.net

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 28th day of August, 2007.

/s/ David H. Charlip_____

David H. Charlip

Admitted *Pro Hac Vice*

**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS**


ALAN C. ANDERSEN, et. al.,

       Plaintiffs,

v.                                                                    No. 05-11904-RCL

BAYVIEW CREMATORY, LLC, et. al.,

       Defendants.

_____/


## <u>AMENDED COMPLAINT</u>

Plaintiffs, Edward Galvin, Jr., Patricia Hannigan, Kathleen McDonough, Tara McDonough, Eleanor Poole, Dana Larsen, Francis DeFort, David Goguen, Jere B. Johnston, Jill Johnston, Dianne E. Munson, LeeAnn Pavelec, and Doris Potvin **(sometimes referred to collectively as the "Plaintiffs")**, sue Defendants, Bayview Crematory, LLC, a New Hampshire Limited Liability Company, Derek A. Wallace, Linda Stokes, Larry Stokes, **(Bayview Crematory, LLC, Derek A. Wallace, Linda Stokes, and Larry Stokes sometimes being referred to collectively as the "Bayview Defendants")**, American Cremation Society, Inc., a Massachusetts corporation, Stephen G. Scatamacchia, Commonwealth Cremation & Shipping Service, Inc., a Massachusetts corporation, Hamel, Wickens & Troupe Funeral Home, Inc., a Massachusetts corporation, Roger Hamel, Hart-Wallace Funeral Home, Neptune Society, Inc., a California corporation, and Simplicity Burial & Cremation, Inc., a Massachusetts corporation, **(American Cremation Society, Inc., Commonwealth Cremation & Shipping Service, Inc., Hamel, Wickens & Troupe Funeral Home, Inc., Hart-Wallace Funeral Home, Neptune Society, Inc., and Simplicity Burial &**

Cremation, Inc., a Massachusetts corporation sometimes being referred to collectively as the "**Funeral Home Defendants**"), and allege as follows:

## The Parties

1.     Plaintiff, Edward Galvin, Jr., is *sui juris* and a citizen of the Commonwealth of Virginia.

2.     Plaintiff, Patricia Hannigan, is *sui juris* and a citizen of the State of Maine.

3.     Plaintiff, Kathleen McDonough, is *sui juris* and a citizen of the State of Rhode Island.

4.     Plaintiff, Tara McDonough, is *sui juris* and a citizen of the State of Rhode Island.

5.     Plaintiff, Eleanor Poole, is *sui juris* and a citizen of the State of Florida.

6.     Plaintiff, Dana Larsen, is *sui juris*, and a citizen of the State of Texas.

7.     Plaintiff, Francis DeFort, is *sui juris* and a citizen of the State of Florida.

8.     Plaintiff, David Goguen, is *sui juris* and a citizen of the State of Florida.

9.     Plaintiff, Jere B. Johnston, is *sui juris* and a citizen of the State of Connecticut.

10.     Plaintiff, Jill Johnston, is *sui juris* and a citizen of the State of Florida.

11.     Plaintiff, Dianne E. Munson, is *sui juris* and a citizen of the State of Vermont.

12.     Plaintiff, LeeAnn Pavelec, is *sui juris* and a citizen of the State of Maryland.

13.     Plaintiff, Doris Potvin, is *sui juris* and a citizen of the State of Florida.

14.     Defendant, Bayview Crematory, LLC, is a dissolved limited liability company originally formed in the State of New Hampshire, maintaining its principal place of business in the State of New Hampshire.

15.     Defendant, Derek A. Wallace, is *sui juris* and a citizen of the Commonwealth of Massachusetts.

16.     Defendant, Linda Stokes, is *sui juris* and a citizen of the Commonwealth of Massachusetts.

17.     Defendant, Larry Stokes a/k/a Lawrence Stokes, is *sui juris* and a citizen of the Commonwealth of Massachusetts.

18.     Defendant, American Cremation Society, Inc., is a dissolved Massachusetts corporation maintaining its principal place of business in the Commonwealth of Massachusetts.

19.     Defendant Stephen G. Scatamacchia is *sui juris* and a citizen of the Commonwealth of Massachusetts.

20.     Defendant, Commonwealth Cremation & Shipping Service, Inc., is a dissolved Massachusetts corporation maintaining its principal place of business in the Commonwealth of Massachusetts.

21.     Defendant, Hamel Wickens & Troupe Funeral Home, Inc., is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in the Commonwealth of Massachusetts. Hamel, Wickens & Troupe Funeral Home, Inc., sometimes does business under the name Cremation Society of Massachusetts.

22.     Defendant Roger Hamel is *sui juris* and a citizen of the Commonwealth of Massachusetts.

23.     Defendant, Hart-Wallace Funeral Home, is a fictitious name used by Wallace Enterprises, Inc., a dissolved Massachusetts corporation maintaining its principal place of business in the Commonwealth of Massachusetts.

24.     Defendant, Neptune Society, Inc., is an organization that preplans and facilitates the cremation of decedents, with its principal place of business in the State of California. The Neptune

Society operates throughout the United States and engages in the marketing, selling and administration of pre-need and at-need cremation services.

25.     Defendant, Simplicity Burial & Cremation, Inc. f/k/a Oceanside Family Funeral Home ("Simplicity") is a dissolved Massachusetts corporation maintaining its principal place of business in the Commonwealth of Massachusetts.

## Jurisdiction and Venue

26.     This action seeks damages on behalf of the Plaintiffs whose deceased family members and loved ones were mishandled by their respective Funeral Home Defendant and in their mishandling and cremation at the Bayview Crematory.  This action claims damages for breach of contract, breach of fiduciary duty, fraud, negligence, tortious interference with a corpse, intentional/reckless infliction of emotional distress, negligent infliction of emotional distress, and civil conspiracy.

27.     This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §1332 (a) in that the each Plaintiff is a citizen of a different state than every Defendant and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

28.     Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because virtually all of the Defendants currently operate or previously operated their businesses in this Federal District; currently conduct or previously conducted business in this Federal District at the time this action was commenced within the meaning of 28 U.S.C. §1391(a), as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this Federal District.

**Preliminary Allegations**

29.     On or about October 8, 1999, Linda Stokes, as Trustee of the Dekes Realty Trust became the owner of certain real property and improvements located in Rockingham County, New Hampshire.  The real property and improvements are known as the Bayview Crematory.

30.     At the time of the acquisition of the real property and improvements known as the Bayview Crematory, Derek A. Wallace was the sole beneficiary of the Dekes Realty Trust.

31.     In November of 1999, Linda Stokes, as Trustee, mortgaged the real property she owned as security for a loan from the Andover Bank for the purpose of constructing the Bayview Crematory.

32.     The construction of the Bayview Crematory was managed and supervised by Lawrence Stokes.

33.     On January 10, 2000, the Bayview Crematory was organized as a New Hampshire Limited Liability Company.  From the date of its organization until September of 2000, Derek A. Wallace was the sole manager and member of Bayview Crematory, LLC.

34.     The Bayview Crematory was never an authorized and approved crematory in the State of New Hampshire.

35.     Bayview Crematory, LLC failed to comply with NRS 325-A:1 in that it never filed the plans for the crematory with the New Hampshire Department of Health and Human Resources.

36.      Bayview Crematory, LLC failed to comply with NRS 325-A:1 in that it never obtained approval of the plans for the crematory from the New Hampshire Department of Health and Human Resources.

37.     Bayview Crematory, LLC failed to comply with NRS 325-A:1 in that it never was inspected by the New Hampshire Department of Health and Human Resources.

38.     Bayview Crematory, LLC failed to comply with NRS 325-A:1 in that it never was approved by the New Hampshire Department of Health and Human Resources.

39.     Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory from commencement of its operations until September of 2000.

40.     In September of 2002, the retail value of all assets owned by the Bayview Crematory, LLC was in excess of $1.00.

41.     In September of 2002, the salvage value of all assets owned by the Bayview Crematory, LLC was in excess of $1.00.

42.     In September of 2002, the assets owned by the Bayview Crematory, LLC would not have been sold to an independent bona fide purchaser for $1.00.

43.     In September of 2002, Derek A. Wallace transferred ownership of the Bayview Crematory, LLC to his mother, Linda Stokes, for $1.00.

44.     Derek A. Wallace sold the Bayview Crematory to his mother because he was the subject of proceedings by the Commonwealth of Massachusetts, Division of Professional Licensure for violating, among other laws and regulations, 239 CMR 3.13 (1) in that said regulation prohibits a person registered with the Board of Registration in Embalming and Funeral Directing (the "Board") or who holds an ownership interest in or is employed by a funeral establishment licensed by the Board from engaging in or holding an ownership interest in a crematorium.

45.     The sale of the Bayview Crematory, LLC to Linda Stokes constituted a continuing violation of 239 CMR 3.13 in that said section (6) of said regulation prohibits a person who is registered with the Board, or who holds an ownership interest in or is employed by any funeral establishment licensed by the Board, from directly or through another person acting with his or her express or implied knowledge or consent, recommend, refer any person to, or employ any business

or service related to the disposition of human remains if that business or service is owned, operated or controlled by one or more of his or her relatives. For purposes of 239 CMR 3.13(6), a relative includes a person's parent or step-parent.

46.    In proceedings before the Board, Derek A. Wallace admitted violating 239 CMR 3.13 (1) and subsequently violating 239 CMR 3.13(6) by transferring ownership to his mother

47.    From September of 2002 until February 23, 2005, Linda Stokes, as owner of the Bayview Crematory designated her husband, Lawrence Stokes, was the manager and supervisor of the Bayview Crematory, LLC.

48.    During the period of time when Lawrence Stokes was the manager and supervisor of the Bayview Crematory, LLC, he maintained a residence in the State of Florida and was rarely at the Bayview Crematory in any capacity.

49.    Cremation certificates were issued by the Bayview Crematory to identify the remains accompanying the certificate and to certify that the process of cremation has been properly performed and completed.

50.    Some of the cremation certificates issued by the Bayview Crematory after September of 2000 contained only a stamped facsimile signature of Lawrence Stokes since he was not on the premises and did not perform or witness the associated cremation.

51.    The Bayview Crematory could not determine what employee performed a cremation if the signature on the cremation certificate was not an original signature.

52.    The Bayview Crematory was not able to identify the individual who performed each and every cremation.

53.    The Bayview Crematory was not able to establish the accuracy of each medical examiner's certificate prepared for each cremation.

54.     Neither Linda Stokes nor Lawrence Stokes, or any other agent or employee employed by them, had any experience or expertise in the operation of a crematory.

55.     Linda Stokes, Trustee, knew of the existence and operation of the Bayview Crematory on the real property she held as trustee for her son, Derek A. Wallace.

56.     Linda Stokes, individually, knew of the existence and operation of the Bayview Crematory on the real property she held as trustee for her son, Derek A. Wallace, during the period that she was also the owner of the Bayview Crematory.

57.     Linda Stokes, in addition to being the owner of the land underlying the Bayview Crematory and the owner of Bayview Crematory, LLC, also worked as an employee of the Bayview Crematory as a bookkeeper, simultaneously paying the expenses attributable to the funeral homes as directed by her son, Derek A. Wallace.

58.     On February 16, 2005, law enforcement authorities came to the Bayview Crematory as part of an ongoing criminal investigation.

59.     On February 16, 2005, Lawrence Stokes, while absent from the premises where the Bayview Crematory was located, falsely identified himself to law enforcement authorities as the "owner" of the Bayview Crematory.

60.     On February 16, 2005, Lawrence Stokes, while absent from the premises where the Bayview Crematory was located, refused the legitimate and valid request of law enforcement authorities to be given access to its books and records, as required by NRS 325-A:3.

61.     On February 16, 2005, Lawrence Stokes, while absent from the premises where the Bayview Crematory was located, telephonically instructed law enforcement authorities to leave the premises.

62.     On February 23, 2005, law enforcement authorities raided the Bayview Crematory with valid search warrants and based upon their findings during the raid immediately shut down the Bayview Crematory.

63.     The Bayview Crematory never reopened after February 23, 2005 and on May 31, 2007, Bayview Crematory, LLC was administratively dissolved by the New Hampshire state government.

64.     The February 23, 2005 raid revealed a series of gruesome finds at the Bayview Crematory.  Police officers executing valid search warrants found, among other things, unlabeled and unidentified urns filled with cremated human remains; two bodies in a single retort (oven), a body located in a broken refrigeration unit in a state of putrefactive decomposition; a trash bin heaped with charred pacemakers, hip replacements, and prosthetics; and various documents related to cremations that were signed in blank or contained forged or photocopied signatures..

65.     Plaintiffs utilized their respective Funeral Home Defendant to properly and respectfully perform funeral directing services, including cremation of their decedent.  Each Funeral Home Defendant was compensated for providing the funeral directing services.

66.     Each of the Funeral Home Defendants utilized the services of Bayview Crematory for the cremation of the Plaintiffs' respective decedents.

67.     Each of the Funeral Home Defendants compensated the Bayview Crematory for the cremation of the Plaintiffs' respective decedents.

68.     In order to assist the Funeral Home Defendants, Derek A. Wallace formed a business entity known as Professional Mortuary Assistance which provided the service of picking up bodies of decedents from funeral homes for transport to the Bayview Crematory.

69.    Through the use of Professional Mortuary Assistance, the bodies of the Plaintiffs' decedents were transported to the Bayview Crematory where they were cremated.

70.    If the Funeral Home Defendants had observed and followed industry practice, they would have transported the bodies of the Plaintiffs' decedents to the Bayview Crematory, observed the cremation, and returned the cremains to the Plaintiffs.

71.    The Funeral Director Defendants' use of Professional Mortuary Assistance allowed the Funeral Home Defendants to increase their profit margin on the cremation of each of the Plaintiffs' decedents.

72.    By using Professional Mortuary Assistance, the Funeral Home Defendants surrendered exclusive possession and control of the bodies of the Plaintiffs' decedents to an unauthorized and unapproved facility abandoning control of those decedents' bodies entrusted to them and placed under their charge.

73.    Reputable funeral home operators following standard industry practices and proper funeral directing procedures would not surrender control of the bodies of the deceased to a delivery service.

74.    For example, in a June 29, 2003 article titled, "N.H. Firm Offers Lift to Funeral Homes' Bottom Line But Questions, Complaints Are Raised Against Operator," *The Boston Globe* reported the following:

> Robert Biggins, the owner of the Magoun-Biggins Funeral Home in Rockland, said he had no personal knowledge of Bayview Crematory but was troubled by the idea of relinquishing control of a body under his charge. He said families turn over a loved one to his funeral home, not to a crematory they know nothing about. He said the Tri-State Crematory in Noble, Ga., also operated a pickup and delivery system, which shielded it from funeral home scrutiny. Investigators last year found more than 300 decomposed and mummified bodies in the woods surrounding Tri-State Crematory.
>
> John Anderson, owner of Anderson-Bryant Funeral Home in Stoneham, said Bayview's approach concerned him. He said his funeral home prefers to take bodies

to a crematory and watch the whole process. "That eliminates the problem they had in Georgia," he said.

75.    As a matter of standard practice and procedure, the cremation and funeral home industry have an ethical code which requires decorum and respect in handling human remains.

76.    Three of the leading cremation and funeral associations, the Cremation Association of North America ("CANA"), the International Cemetery & Funeral Association ("ICFA"), and the National Funeral Directors Association ("NFDA") provide funeral directors with basic due diligence steps when dealing with third-party crematories. These due diligence steps are presented in the form of printed material entitled "Due Diligence for Funeral Homes Utilizing Third Party Crematories" (the "Due Diligence Package") and were made available to all funeral homes and cremation providers, including the Funeral Home Defendants. The Due Diligence Package recommended that each funeral home follow a number of simple steps in order to "protect the cremation families it serves."

77.    The Introduction section of the Due Diligence Package states that each funeral home "has a responsibility to the family to ensure that the crematory will carry out the cremation in a legal, professional and ethical manner."

78.    Significantly, the Due Diligence Package clearly states that the "funeral home should deliver the remains to the crematory using its own personnel."

79.    Instead of adhering to this important principle, each of the Funeral Home Defendants utilized Derek A. Wallace's company to pick up remains from the Funeral Home Defendants and return the cremains when the process was completed.

80.    Additionally, the Due Diligence Package states that each funeral home should have a "due diligence" file on each outside crematory the funeral home uses and that an "important aspect

of due diligence is a review of the licenses and operational records of the crematory." It is recommended that the records request should be updated at least once a year.

81.     Had the Funeral Home Defendants observed the recommendations of their national associations and determined the status of the Bayview Crematory with the New Hampshire Department of Health and Human Resources, they would have discovered that the Bayview Crematory had never filed plans, and been inspected and approved for operation with the New Hampshire Department of Health and Human Resources.

82.     Finally, the Due Diligence Package recommends that each funeral home should conduct an unannounced inspection of the crematory at least once a year and document their findings.

83.     Funeral home directors agree that a funeral home should conduct the proper due diligence prior to selecting a crematorium. Fred Healy, funeral director with the Morse-Bayliss Funeral Home in Lowell, Massachusetts, and Jim Dolan, a funeral director with Dolan Funeral Home in Chelmsford, Massachusetts, both said that exploring a company's reputation, meeting the owners, and inspecting the business are the best way to check out a firm. Dolan said, "It's just like everything else in life. You've got to be diligent."

84.     Jim O'Donnell Jr., co-owner of the James F. O'Donnell & Sons Funeral Home in Lowell, Massachusetts, said making sure the facility is licensed is also important, as is a willingness to accept a higher price in exchange for knowing remains are treated properly. O'Donnell said that his employees personally deliver bodies to the Haverhill crematory used by his funeral home so they know the bodies are treated properly up to that point.

85.     The Funeral Home Defendants executed contracts to perform funeral directing services in connection with the disposition of the Plaintiffs' decedents, including cremation. These

services were to be performed in a respectful manner. Each decedent's remains were to be cremated with dignity and respect in keeping with public sensibilities, the standards of practice-care and in accordance with the law.

86.    The Funeral Home Defendants failed to inspect, supervise, monitor or oversee the Bayview Crematory's practices although they were under a duty to do so and thereby breached their duties to Plaintiffs. The Funeral Home Defendants also failed to return the cremated remains of some decedents to their family members.

87.    The failure of each and every Funeral Home Defendant to discharge its duty of special care to ensure that the remains entrusted to their care were handled respectfully and in accordance with the wishes of the families of the deceased contributed to and caused harm to the Plaintiffs.

88.    Had any one of the Funeral Home Defendants inspected, supervised or monitored Bayview Crematory's cremation practices, as this special duty requires, Bayview Crematory's practices would have been discovered and stopped before injury took place.

89.    Because each of the Funeral Home Defendants failed to practice within industry standards, Bayview Crematory was able to continue its practice of mishandling and desecrating the remains of the loved ones of family after family.

90.    Through the acts of omission and commission of the Funeral Director Defendants, the Plaintiffs' decedents were mishandled.

91.    The Funeral Home Defendants, Hart-Wallace and Simplicity, owned and controlled by Derek A. Wallace were imbued with actual and direct knowledge of the wrongful conduct at Bayview Crematory. Nonetheless, they intentionally directed their business to the Bayview Crematory for financial gain, irrespective of the mishandling of the Plaintiffs' decedents.

92.    Placing profits above people, the Funeral Home Defendants each used the Bayview Crematory to carry out the cremation process as part of the services it agreed to perform for the benefit of Plaintiffs.  The Funeral Home Defendants had those cremations performed in a facility that was never properly approved or established under New Hampshire laws and regulations.  The Bayview Crematory during its existence, never legally operated.

93.    The Funeral Home Defendants wholly failed to accomplish the cremation and disposition process with the dignity and respect expected of them by public sensibilities and required of them by law.  The Funeral Home Defendants, without describing their actual practices or obtaining express written permission from Plaintiffs, knowingly, recklessly and/or negligently permitted and facilitated the disrespectful, improper and illegal mishandling and improper cremations, desecration, and abuse of the remains of decedents.

94.    On August 25, 2004, the Board of Regulation of Funeral Directors and Embalmers suspended Derek A. Wallace's license in the Commonwealth of Massachusetts for a period of five-years as the result of unprofessional conduct and deceptive practices.

95.    According to the 53-page decision from the Board of Regulation of Funeral Directors and Embalmers (the "Decision"), Wallace attempted to cover up his transgressions and was unwilling to take the charges against him seriously.  In fact, Wallace had to be reprimanded and asked not to laugh during the testimony of witnesses.

96.    The Decision noted that: "Respondent claims that he made many 'mistakes' which do not rise to the level of gross misconduct . . . .  If there were only one mistake, that argument might hold water.  However, what he terms mistakes were a litany of violations of the board's rules and regulations."

97.     Accordingly the board found Wallace violated a large number of board regulations and rules.

98.     As noted above, Wallace was also disciplined for his ownership of the Bayview Crematory in conjunction with his ownership Hart-Wallace Funeral Home and Simplicity.  The Board concluded Wallace violated Massachusetts regulations barring funeral directors from owning cemeteries or crematories.  According to the Decision, Wallace tried to cover up his violation of the regulations in September 2002 by selling his interest in the crematory to his mother for $1 while continuing to run the facility.  "The number of misrepresentations by Derek Wallace in connection with this dual ownership is staggering," the board said in the Decision.

99.     In late 2005, Derek A. Wallace surrendered his license as a funeral director and embalmer to the Board.

100.    Investigators concluded that the Bayview Crematory's practices were so shoddy that hundreds of New England families could not be sure that the high-volume, low-priced, unauthorized and unapproved crematorium gave them back the right ashes.  Bayview Crematory handled the remains of hundreds of Massachusetts residents, as well as cadavers from Harvard Medical School, despite operating without complying with New Hampshire law.  The Rockingham County Attorney, Jim Reams, who is in charge of the case, admitted that: "There is nothing we can do to assure [families] that they have the right remains."

101.    According to the Funeral Consumers Alliance of Eastern Massachusetts, a watchdog group that advises consumers, "The funeral homes that used Bayview betrayed the confidence of the families they served."

102.    The Funeral Home Defendants are responsible for the atrocities that occurred at Bayview Crematory because they knew, or recklessly and/or negligently disregarded, the manner in

which the Bayview Crematory mishandled the remains of the Plaintiffs' decedents.  A February 26, 2005 article in *The Boston Globe* titled "Families' Doubt on Ashes Led to Lawsuits Crematory Was Sued Last Year in Boston," stated in part:

> The focus for now is still on Bayview, a low-price crematory that is not held in high regard, according to a funeral director at one Boston-area funeral home, who said Bayview was avoided because of the way it did business.
>
> "It was pretty well-known throughout the industry that they were a shoddy operation," said the director, who spoke on condition of anonymity.
>
> "They would send a box truck around, and they would swing through the area twice a week," he said.  "They would tag a box, put the body in it, and continue on their way."

103.    On April 18, 2005, it was reported that ashes in four of the urns seized during the February 23, 2005 raid would probably never be identified because the paperwork seized at Bayview did not reveal the identity of the person(s) whose remains were in the urns.

104.    On May 13, 2005, law enforcement authorities found the remains of 25 bodies in urns when they raided the Hart-Wallace Funeral Home and Simplicity Burial & Cremation.  Derek A. Wallace owns Hart-Wallace Funeral Home and Simplicity Burial & Cremation.

105.    On or about June 30, 2005, Derek A. Wallace was arrested by the Massachusetts State Police and was charged with two counts of theft by deception and one count of abuse of corpse.

106.    James Fuller, a Bayview Crematory employee, was charged with two counts of fraudulent handling of recordable writing (*i.e.*, forgery) and one count of abuse of corpse.

107.    Dr. Putnam Breed, a District Medical Examiner for the State of Massachusetts, was charged with two counts of fraudulent handling of recordable writing and one count of theft by deception.

108.    Prior to the three arrests described above, the police conducted an investigation of Bayview Crematory.  Included in the findings was the fact that over 300 cremations were performed

by Bayview Crematory where the next of kin signed an authorization form for another crematorium to perform the cremation.

109.     Even though the next of kin specifically authorized cremation at another crematory, the Funeral Home Defendants employed by those families utilized Bayview Crematory.

110.     In many cases, Hart-Wallace Funeral Home and Simplicity Burial & Cremation, the entities owned by Derek A. Wallace, used the services of Bayview Crematory even thought the next of kin designated a different crematory.

111.     Prosecutors said that Derek A. Wallace, Linda Stokes, and Lawrence Stokes schemed to funnel clients to Bayview for illegal cremations.  "They created an impression and were promising that they were doing legal cremations when they knew they weren't," said Jim Reams, Rockingham County Attorney in Massachusetts.

112.     On July 19, 2005, a Grand Jury handed down 21 indictments against Derek A. Wallace, James Fuller, and Dr. Putnam Breed in connection with the wrongdoing at Bayview.  Derek A. Wallace was indicted on four counts of theft by deception and one count of abuse of a corpse. James Fuller was indicted on four counts of fraudulent handling of recordable writings and two counts of abuse of a corpse.  Dr. Putnam Breed was indicted on nine counts of fraudulent handling of recordable writings and two counts of theft by deception.

113.     On or about August 11, 2005, indictments were handed down against Bayview Crematory, as well as additional indictments against Derek A. Wallace.  Derek A. Wallace was indicted on four charges of theft by deception, bringing the total number of charges against him to seven.  Seven charges were handed down against Bayview; two felony counts of theft by deception; and five misdemeanor charges for failing to file cremation certificates with the town of Seabrook.

114.    The grand jury also levied more charges against James Fuller, including additional counts of theft and fraud.

115.    In August of 2006, Linda Stokes and Larry Stokes were indicted for multiple counts of tax evasion relating to the operation of the Bayview Crematory.

116.    Ultimately, James Fuller pleaded guilty to the charges against him; Dr. Putnam Breed was found guilty by a jury of the charges against him; and Linda and Larry Stokes pleaded guilty to the charges against them.  Derek A. Wallace is scheduled for trial in September of 2007.

117.    The Bayview Crematory systematically and commonly mishandled, desecrated, and abused the remains of the decedents in a manner offensive to human sensibilities

118.    The Bayview Crematory never operated in a manner evidencing compliance with the law of the State of New Hampshire.

119.    On May 1, 2001, Edward Galvin, the father of the Plaintiff, Edward Galvin, Jr., died in Harwich, Massachusetts.

120.    Edward Galvin, Jr. employed the Funeral Home Defendant, Hamel, Wickens & Troupe to perform funeral directing services, including cremation, relating to the disposition of his father's body and thereafter to return his cremains.

121.    Hamel, Wickens & Troupe surrendered the body of Edward Galvin to the Bayview Crematory.

122.    Edward Galvin was cremated at the Bayview Crematory on May 4, 2001.

123.    On January 15, 2005, Gertrude L. Scheid, the aunt of Patricia Hannigan, died in Lincoln, Maine.

124.    Patricia Hannigan contacted The Neptune Society, to arrange the cremation of her aunt's body and thereafter to return her cremains.

125.    The Neptune Society arranged for delivery of the body of Gertrude Scheid to the Bayview Crematory.

126.    Gertrude Scheid was cremated at the Bayview Crematory on January 27, 2005.

127.    On December 3, 2004, Judith P. Eastman, the mother of Kathleen McDonough, died in Seabrook, New Hampshire.

128.    Kathleen McDonough employed Simplicity Burial & Cremation to perform funeral directing services, including cremation, relating to the disposition of her body and thereafter the return of her cremains.

129.    Simplicity Burial & Cremation surrendered the body of Judith P. Eastman to the Bayview Crematory.

130.    Judith P. Eastman was cremated at the Bayview Crematory on December 6, 2004.

131.    On December 6, 2004, Judith P. Eastman, the grandmother of Tara McDonough, died in Seabrook, New Hampshire.

132.    Tara McDonough employed Simplicity Burial & Cremation to perform funeral directing services, including cremation, relating to the disposition of her grandmother's body and thereafter to return her cremains.

133.    Simplicity Burial & Cremation surrendered the body of Judith P. Eastman to the Bayview Crematory.

134.    Judith P. Eastman was cremated at the Bayview Crematory on December 6, 2004.

135.    On January 21, 2005, Alice Scafard, the mother of Eleanor Poole, died in Andover, Massachusetts.

136.    Eleanor Poole employed Hart-Wallace Funeral Home to perform funeral directing services, including cremation, relating to the disposition of her mother's body and thereafter to return her cremains.

137.    Hart-Wallace Funeral Home surrendered the body of Alice Scafard to the Bayview Crematory.

138.    Alice Scafard was cremated at the Bayview Crematory on January 28, 2005.  Alice Scafard's cremains were among those discovered at the Bayview Crematory during the raid of February 23, 2005.

139.    On March 5, 2002, Ruth Larson, the mother of Dana Larson, died in Seabrook, New Hampshire.

140.    Dana Larsen employed Commonwealth Cremation & Shipping, Inc. to perform funeral directing services, including cremation, relating to the disposition of his mother's body and thereafter to return her cremains.

141.    Commonwealth Cremation & Shipping, Inc. surrendered the body of Ruth Larsen to the Bayview Crematory.

142.    Ruth Larson was cremated at the Bayview Crematory on March 7, 2002.

143.    On March 29, 2001, Keith Larsen, the brother of Dana Larson, died in Boston, Massachusetts.

144.    Francis Larsen employed Hamel Wickens & Troupe to perform funeral directing services, including cremation, relating to the disposition of his body and thereafter to return his cremains.

145.    Hamel, Wickens & Troupe surrendered the body of Keith Larsen to the Bayview Crematory.

146.    Keith Larsen was cremated at the Bayview Crematory on April 2, 2001.

147.    On April 7, 2004, Shirley Mae Erickson, the mother of Francis DeFort, died in Gloucester, Massachusetts.

148.    Francis DeFort employed American Cremation Society to perform funeral directing services, including cremation, relating to the disposition of his mother's body and thereafter to return her cremains.

149.    American Cremation Society surrendered the body of Shirley Mae Erickson to the Bayview Crematory.

150.    Shirley Mae Erickson was cremated at the Bayview Crematory on April 12, 2004.

151.    On January 12, 2003, Doreen Goguen, the mother of David Goguen, died in Weymouth, Massachusetts.

152.    David Goguen employed Hamel, Wickens, & Troupe to perform funeral directing services, including cremation, relating to the disposition of his mother's body and thereafter to return her cremains.

153.    Hamel, Wickens & Troupe surrendered the body of Doreen Goguen to the Bayview Crematory.

154.    Doreen Goguen was cremated at the Bayview Crematory on January 15, 2003.

155.    On February 4, 2004, Nathelie B. Johnston, the mother of Jere B. Johnston, died in Massachusetts.

156.    Jere B. Johnston employed Simplicity Burial & Cremation to perform funeral directing services, including cremation, relating to the disposition of her mother's body and thereafter to return her cremains.

157.    Simplicity Burial & Cremation surrendered the body of Nathelie B. Johnston to the Bayview Crematory.

158.    Nathelie B. Johnston was cremated at the Bayview Crematory.

159.    On February 4, 2004, Nathelie B. Johnston, the mother of Jill Johnston, died in Massachusetts.

160.    The family employed Simplicity Burial & Cremation to perform funeral directing services, including cremation, relating to the disposition of her mother's body and thereafter to return her cremains.

161.    Nathelie B. Johnston was cremated at the Bayview Crematory.

162.    On March 21, 2004, Jacqueline Emerton, the mother of Dianne E. Munson, died in Massachusetts.

163.    Jacqueline Emerton was a Native American Indian who strictly observed the customs of her tribe and nation.

164.    Dianne E. Munson employed Simplicity Burial & Cremation to perform funeral directing services, including cremation, relating to the disposition of her mother's body and thereafter to return her cremains.

165.    In making the arrangements for her mother's cremation, Dianne E. Munson specifically instructed the employees of Simplicity Burial & Cremation with regard to the manner in which the cremation was to be performed to properly observe the customs of Jacqueline Emerton's Native American heritage, including her manner of dress and objects to accompany the body.

166.    Simplicity Burial & Cremation surrendered the body of Jacqueline Emerton to the Bayview Crematory.

167.    Jacqueline Emerton was cremated at the Bayview Crematory.

168.    On June 7, 2001, Doris Arsenault, the mother of LeeAnn Pavelec, died in Massachusetts.

169.    Doris Arsenault employed Hart-Wallace Funeral Home to perform funeral directing services, including cremation, relating to the disposition of her mother's body and thereafter to return her cremains.

170.    Hart-Wallace Funeral Home surrendered the body of Doris Arsenault to the Bayview Crematory.

171.    Doris Arsenault was cremated at the Bayview Crematory on June 9, 2001.

172.    On October 20, 2000, Juliette McDonald, the mother of Doris Potvin, died in Massachusetts.

173.    Doris Potvin employed Hart-Wallace Funeral Home to perform funeral directing services, including cremation, relating to the disposition of her grandmother's body and thereafter to return her cremains.

174.    Hart-Wallace Funeral Home surrendered the body of Juliette McDonald to the Bayview Crematory.

175.    Juliette McDonald was cremated at the Bayview Crematory.

<u>**Count I**</u>
<u>**Breach of Contract**</u>
<u>**(Funeral Home Defendants)**</u>

176.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

177.    This is an action by each Plaintiff for breach of contract.

178.    Each Plaintiff entered into a written agreement with their respective Funeral Home Defendant for the performance of funeral directing services, including cremation, for compensation

for their respective decedent.  A copy of each written agreement is in the possession of the particular Funeral Home Defendant.

179.    The written agreements did not provide for the designation of a crematory by the Plaintiffs.  The agents, servants, and employees of each Funeral Home Defendant did not elicit a designation from each Plaintiff.  The Plaintiffs were neither knowledgeable nor sophisticated in matters related to the disposition of dead bodies or the protocols and procedures related thereto.

180.    As part of the process of designating a crematory, the Funeral Home Defendants did not disclose the true status of Bayview Crematory as unauthorized and unapproved to by the State of New Hampshire to perform cremations.

181.    Each of the Plaintiffs has performed all promises, covenants and conditions required on their part to be performed under the agreements with their respective Funeral Home Defendant and have fully paid the agreed-upon price for the services agreed to.

182.    Each Funeral Home Defendant breached its contract with its respective Plaintiff by failing to perform the agreed-upon funeral directing services, including cremation.  Particularly, each Funeral Home Defendant used or employed the Bayview Crematory, an unauthorized and unapproved facility, and in doing so caused the illegal and improper cremation of each Plaintiff's decedent.

183.    As a direct and proximate result of the Funeral Home Defendants' breach of their agreements with their respective Plaintiff, each Plaintiff has incurred damages equivalent to the amounts that they paid to each Funeral Home Defendant for funeral directing services, including amounts paid to the Bayview Crematory.

184.    Additionally, and as a further result of the breach of contract by the Funeral Home Defendant, each Plaintiff have incurred and/or will incur additional monetary losses in attempting to recover, identify and properly dispose of the remains of their respective decedent.

WHEREFORE, Plaintiffs demand damages against their respective Funeral Home Defendant, together with interest and the costs of this action.

**Count II**
**Breach of Fiduciary Duty**
**(All Defendants)**

185.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

186.    This is an action for breach of fiduciary duty.

187.    Each of the Defendants played an integral role in the disposition of the body of a Plaintiffs' decedent.  These roles directly involve the care, custody, and control of the decedent's body during the disposition process and are essential to the proper method of preparing a body for cremation, performing the actual cremation of the body, and returning the cremains to the family members.

188.    Each and every act in the process involves maintaining the identity of the decedent and treating each decedent's body with the proper respect and reverence associated with a dignified disposition.  The process and the proper performance of each step therein are critical to providing the Plaintiffs, as the family of each decedent, with the assurance and peace of mind necessary to closure.

189.    Because of the unique and special nature of the services performed, each Defendant occupies a fiduciary relationship to their respective Plaintiffs.

190.    Each Plaintiff places and reposes trust and confidence in their respective Defendants.  Each Plaintiff reasonably and justifiably expects that the disposition of their respective decedent's body will be performed or accomplished in a dignified and respectful manner.

191.    Each Defendant who is involved in the disposition of the body of a Plaintiff's decedent knows and expects that a special relationship of trust is placed upon them and that each Plaintiff expects their respective decedent to be handled in a reverent, respectful, and dignified manner.

192.    In performing their respective roles in the disposition of the body of a Plaintiff's decedent, each Defendant accepted the trust reposed in it and agreed to honor that trust and discharge their duties accordingly, including specifically the duty to perform disposition services in a dignified and respectful manner, within the dictates of industry practice, and in accordance with all applicable law and regulations.

193.    Each Defendant is therefore charged with and accepts this fiduciary or special duty to their respective Plaintiff to fully and faithfully perform the disposition duties.

194.    In mishandling the bodies of the Plaintiffs' decedents, by negligently or recklessly entrusting Bayview Crematory with the bodies of the Plaintiffs' decedents, and by failing to properly perform or accomplish those services that the Defendants had agreed to perform, the Defendants, and each of them, breached and violated the special and fiduciary duty owed by each of them to their respective Plaintiff.

195.    Further, the failure of each and every Funeral Home Defendant to faithfully perform their special duties and responsibilities to the Plaintiffs, including using an unauthorized and unapproved crematory for the consummate act in the disposition, the failure to observe and supervise the cremation process, and to assure that the Bayview Crematory properly and respectfully handled the decedents' remains, contributed to and caused injury to Plaintiffs.

196.    The Defendants' conduct in breach of their fiduciary obligations was intentional, knowing, and done with reckless and conscious disregard of the rights of Plaintiffs.

197.    As a direct and proximate cause of the Defendants' breach of fiduciary duty, the Plaintiffs have suffered stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning.

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

## Count III
## Fraud
## (The Bayview Defendants)

198.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

199.    This is an action for damages arising from the fraudulent acts of omission and commission on the part of the Bayview Defendants.

200.    Each of the Bayview Defendants, through their action in furthering the operation and business activities of the Bayview Crematory, committed a misrepresentation of the authority and approval of the Bayview Crematory to legally perform cremations in the State of New Hampshire.

201.    Each of the Bayview Defendants knew that the Bayview Crematory had failed to comply with laws of the State of New Hampshire and the requirements therein that were precedent to the legal operation of a crematory.

202.    Imbued with this knowledge, the continuing acceptance of business from the Funeral Home Defendants, the acceptance of the bodies of the Plaintiffs' decedents for cremation, the performance of the cremation of the bodies of the Plaintiffs' decedents, and the failure to observe regular and customary performance of cremations within the standards of the industry constituted an ongoing and continuous active concealment from Plaintiffs that constitutes fraudulent conduct.

203.    The Bayview Defendants concealed their unauthorized and unapproved status to operate in the State of New Hampshire from the Plaintiffs; concealed their operation of the Bayview Crematory in violation of Massachusetts regulations relating to ownership of the Bayview Crematory from the Plaintiffs; concealed their variance from accepted standards in the industry for the performance of cremations; and through the return of separately packaged cremated remains, impliedly represented that cremations had been properly accomplished, concealing same from Plaintiffs in such a way that it was impossible for Plaintiffs to discover the intrinsically commingled and adulterated nature of the cremated remains.

204.    The Bayview Defendants knowingly used forged signatures on medical examiner's certificates, used stamped facsimile signatures of individuals on cremation certificates when the person whose signature appeared thereon did not perform the cremation or was even present at the cremation, photocopied blank documents bearing an original signature and thereafter filled in the missing information on the photocopy, and otherwise manipulated the content of documents essential to the establishment of the propriety of the cremation of each Plaintiff's decedent

205.    Each of the Bayview Defendants knew that the Plaintiffs would rely upon the fictitious appearance of legality and propriety in accepting the cremains of their respective decedents as having been reverently and properly cremated.

206.    Had the Plaintiffs known the truth with respect to the unauthorized and unapproved status of the Bayview Crematory, as well as the various false and fraudulent practices used by Bayview in the course of the cremation of their respective decedents, they would not have permitted their respective decedents to have been cremated there.

207.    Plaintiffs' reliance was justified and reasonable in that the Funeral Home Defendants, whom Plaintiffs had employed to perform funeral directing services, including cremations, and to

whom they entrusted their loved ones' remains for disposition, held themselves out to be reputable, experienced and trustworthy entities in the business of performing funeral directing services.

208.     Plaintiffs first became aware and could reasonably have only first become aware of the fraudulent misconduct of the Bayview Defendants subsequent to the raid on the Bayview Crematory by law enforcement authorities on February 23, 2005.

209.     As a direct and proximate cause of the Bayview Defendants' fraudulent conduct, the Plaintiffs have suffered stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning.

WHEREFORE, Plaintiffs demand damages against the Bayview Defendants, together with interest and the costs of this action.

### Count IV
### Negligence
### (All Defendants)

210.     Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

211.     This is an action for damages arising from the Defendants' negligence.

212.     At all material times, the Defendants owed a number of duties to their respective Plaintiffs, including:

    a.     to act as a reasonable and prudent funeral director in the proper performance and rendition of funeral directing services, including cremation;

    b.     to act as a reasonable and prudent funeral director accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

c.      to act within the standards of the industry for the proper performance and rendition of funeral directing services, including cremation;

d.      to act within the standards of the industry in accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

e.      to perform all acts of due diligence reasonably expected in the industry in dealing with a third-party crematory;

f.      to determine the nature and status of any business entity engaged in the performance of cremations, including but not limited to the business entity's authority and approval to perform same;

g.      to observe and comply with all applicable laws and regulations associated with the legal operation of a crematory;

h.      to employ individuals properly trained or with established experience in the operation of a crematory;

i.      to properly prepare and maintain all documents relating to the proper disposition of a dead body through cremation;

j.      to properly manage and administer the provision of funeral directing services to the public; and

k.      to properly manage and administer the provision of cremation services.

213.    The Defendants breached their duties to their respective Plaintiffs by:

a.      as to the Funeral Home Defendants, failing to act as a reasonable and prudent funeral director in the proper performance and rendition of funeral directing services, including cremation;

b.    as to the Funeral Home Defendants, failing to act as a reasonable and prudent funeral director accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

c.    as to all Defendants, failing to act within the standards of the industry for the proper performance and rendition of funeral directing services, including cremation;

d.    as to all Defendants, failing to act within the standards of the industry in accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

e.    as to the Funeral Home Defendants, failing to perform all acts of due diligence reasonably expected in the industry in dealing with a third-party crematory;

f.    as to the Funeral Home Defendants, failing to determine the nature and status of any business entity engaged in the performance of cremations, including but not limited to the business entity's authority and approval to perform same;

g.    as to the Bayview Defendants, failing to observe and comply with all applicable laws and regulations associated with the legal operation of a crematory;

h.    as to all Defendants, failing to employ individuals properly trained or with established experience in the operation of a crematory;

i.    as to all Defendants, failing to properly prepare and maintain all documents relating to the proper disposition of a dead body through cremation;

j.    as to all Defendants, failing to properly manage and administer the provision of funeral directing services to the public; and

k.    as to all Defendants, failing to properly manage and administer the provision of cremation services.

214.    The breaches of the duties set forth in the preceding paragraph constitute negligence on the part of the respective Defendants.

215.    As a direct and proximate cause of the Defendants' negligence, Plaintiffs have suffered injury and been damaged, including stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning..

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

**Count V**
**Tortious Interference With A Corpse**
**(All Defendants)**

216.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

217.    This is an action for damages arising from tortious interference with a corpse.

218.    Plaintiffs, as the family members and next of kin of their respective decedents, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

219.    Plaintiffs provided specific instructions directly or indirectly to their respective Defendants regarding the manner in which the remains of their respective decedent were to be handled.

220.    The Defendants had the duty and obligation to observe and comply with Plaintiffs' instruction and direction.

221.    Notwithstanding the instructions of the Plaintiffs, the Defendants willfully and deliberately mishandled the remains of each Plaintiff's decedent, and/or caused, contributed to, or aided and abetted the Bayview Defendants' mishandling by knowingly failing to assure that

Bayview Crematory's operations were conducted legally, properly, respectfully; in accordance with all applicable law and regulations; and in accordance with practices, procedures, and protocols consistent with the standards of the industry.

222.    The Defendants failure constituted an interfered with the rights and responsibilities of Plaintiffs to effect the proper, reverent, and dignified disposition of the remains of their respective decedents in accordance with the law and their wishes, requests, and beliefs.

223.    The Defendants' mishandling of the remains and their interference with the rights of Plaintiffs precluded and prevented Plaintiffs from exercising their rights and performing their responsibilities of appropriately disposing of the remains of their decedents and obtaining the proper sense of closure.

224.    The actions of the Defendants in the mishandling of the Plaintiffs' decedents have precluded the Plaintiffs from effectuating the proper, reverent, and dignified disposition of the remains of their respective decedent.

225.    Some of the Plaintiffs have already made some final disposition of the cremains of their respective decedent, which makes it difficult, if not impossible, to ever effectuate a proper disposition.  Other Plaintiffs will necessarily be put to additional expense for testing and pursuing other methods for determining the extent of mishandling.

226.    As a direct, known, foreseeable and proximate result of the interference with and mishandling of the remains of the Plaintiffs' decedents by the Defendants, Plaintiffs have suffered and will continue to suffer injury and damages, including stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning..

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

## Count VI
## Intentional/Reckless Infliction Of Emotional Distress
## (All Defendants)

227.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

228.    This is an action for damages for intentional infliction of emotional distress.

229.    The Defendants' conduct directed toward Plaintiffs was intentional, knowing, and/or reckless.  It is so outrageous that it is not tolerated by civilized society.

230.    As a direct and proximate result of the Defendants' conduct, the Plaintiffs have suffered serious mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

231.    In their conduct, the Defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of Plaintiffs.

232.    As a direct, known, foreseeable and proximate result of the intentional infliction of emotional distress by the Defendants upon their respective Plaintiffs, the Plaintiffs have suffered and will continue to suffer injury and damages, including stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning.

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

<u>**Count VII**</u>
<u>**Negligent Infliction Of Emotional Distress**</u>
<u>**(All Defendants)**</u>

233.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

234.    At all material times, the Defendants owed a number of duties to their respective Plaintiffs, including:

l.    to act as a reasonable and prudent funeral director in the proper performance and rendition of funeral directing services, including cremation;

m.    to act as a reasonable and prudent funeral director accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

n.    to act within the standards of the industry for the proper performance and rendition of funeral directing services, including cremation;

o.    to act within the standards of the industry in accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

p.    to perform all acts of due diligence reasonably expected in the industry in dealing with a third-party crematory;

q.    to determine the nature and status of any business entity engaged in the performance of cremations, including but not limited to the business entity's authority and approval to perform same;

r.    to observe and comply with all applicable laws and regulations associated with the legal operation of a crematory;

s.        to employ individuals properly trained or with established experience in the operation of a crematory;

t.        to properly prepare and maintain all documents relating to the proper disposition of a dead body through cremation;

u.        to properly manage and administer the provision of funeral directing services to the public; and

v.        to properly manage and administer the provision of cremation services.

235.    The Defendants breached their duties to their respective Plaintiffs by:

l.        as to the Funeral Home Defendants, failing to act as a reasonable and prudent funeral director in the proper performance and rendition of funeral directing services, including cremation;

m.       as to the Funeral Home Defendants, failing to act as a reasonable and prudent funeral director accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

n.        as to all Defendants, failing to act within the standards of the industry for the proper performance and rendition of funeral directing services, including cremation;

o.        as to all Defendants, failing to act within the standards of the industry in accepting the responsibilities associated with the proper performance and rendition of funeral directing services, including cremation;

p.        as to the Funeral Home Defendants, failing to perform all acts of due diligence reasonably expected in the industry in dealing with a third-party crematory;

q.       as to the Funeral Home Defendants, failing to determine the nature and status of any business entity engaged in the performance of cremations, including but not limited to the business entity's authority and approval to perform same;

r.       as to the Bayview Defendants, failing to observe and comply with all applicable laws and regulations associated with the legal operation of a crematory;

s.       as to all Defendants, failing to employ individuals properly trained or with established experience in the operation of a crematory;

t.       as to all Defendants, failing to properly prepare and maintain all documents relating to the proper disposition of a dead body through cremation;

u.       as to all Defendants, failing to properly manage and administer the provision of funeral directing services to the public; and

v.       as to all Defendants, failing to properly manage and administer the provision of cremation services.

236.    The breaches of the duties set forth in the preceding paragraph constitute negligence on the part of the respective Defendants.

237.    As a direct and proximate cause of the Defendants' negligence, Plaintiffs have suffered severe mental injuries and emotional distress manifesting itself through significant physical consequences.

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

## Count VIII
## Civil Conspiracy
## (All Defendants)

238.    Plaintiffs repeat and reallege paragraphs 1 through 175 above as if fully set forth herein.

239.    This is an action for damages for civil conspiracy.

240.    Each and every of the Defendants conspired to accomplish an unlawful purpose.

241.    Each and every of the Defendants knew at all times relevant herein that the conduct of the other Defendants, including the Bayview Defendants, constituted a breach of duty and gave substantial assistance or encouragement to the other Defendants so to conduct themselves.  Each Defendant offered substantial assistance and/or encouragement to the other Defendants with the knowledge that such assistance and/or encouragement was contributing to a common tortuous plan.

242.    As a result of Defendants' conspiracy to accomplish an unlawful purpose, Plaintiffs have suffered harm.

243.    As a direct and proximate cause of the Defendants' conspiratorial conduct, the Plaintiffs have suffered stigma damages, severe emotional distress manifesting itself through significant physical consequences, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning.

WHEREFORE, Plaintiffs demand damages against the Defendants, together with interest and the costs of this action.

## Demand For Jury Trial

The Plaintiffs demand trial by jury on all issues so triable as a matter of right.

Dated this 28th day of August, 2007.

Respectfully submitted,
Plaintiffs, by their attorneys


/s/ David H. Charlip
David H. Charlip (Florida Bar No.: 329932)
Charlip Law Group, LC
1930 Harrison Street, Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 (Fax)
dcharlip@charliplawgroup.com



/s/ Lisa Debrosse-Johnson
Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740
debrossejohnson@comcast.net

## **Certificate of Service**

I HEREBY CERTIFY that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 28th day of August, 2007.

/s/ David H. Charlip
David H. Charlip
Admitted *Pro Hac Vice*